# FARIBAULT DAILY NEWS, INC., v. INTERNATIONAL TYPOGRAPHICAL UNION AND OTHERS.[1]

April 5, 1952.

No. 35,744.

[1]Reported in 53 N. W. (2d) 36.

*John A. Goldie* and *Samuel I. Sigal,* for relators.

*Eugene A. O'Brien* and *Charles N. Sayles,* for respondent.

*Donald C. Savelkoul* filed a brief as *amicus curiae* on behalf of Minnesota State Federation of Labor.

*Felhaber & Larson* and *Mark H. Gehan* filed a brief as *amici curiae* on behalf of St. Paul Committee on Industrial Relations, Inc., and Minnesota Employers' Association.

*Leavitt R. Barker, Curtis L. Roy,* and *Dorsey, Colman, Barker, Scott & Barber* filed a brief as *amici curiae* on behalf of Associated Industries of Minneapolis.

*Douglas Hall* and *Hall, Smith & Hedlund* filed a brief as *amici curiae* on behalf of Hennepin County C. I. O. Council.

MAGNEY, JUSTICE.

Petition by relators for a writ of prohibition to restrain the district court for Rice county, fifth judicial district, from enforcing a temporary restraining order, from holding a hearing on an order to show cause why a temporary injunction should not issue, and from holding any further proceedings in the matter. Relators are the International Typographical Union, Joe Rhoden, representative thereof, Faribault Typographical Union, Local 739, and its members. Relators will be referred to as defendants and respondent as plaintiff.

Defendant Faribault Typographical Union, Local 739, is a member of the International Typographical Union (hereinafter referred to as the Local and International respectively). Plaintiff, Faribault Daily News, Inc., publishes a daily newspaper in the city of Faribault. The Local was recently organized by the 13 employes of plaintiff. The Local had never been certified as a collective bargaining agent either by the National Labor Relations Board (hereinafter referred to as the Board) or by the state authorities.

After organization, the Local made a demand upon plaintiff to negotiate a contract and presented to it a copy of a proposed contract. Plaintiff thereupon presented a petition to the Board asking that an appropriate bargaining unit be established at its plant. In response, the Board notified plaintiff that International was not a certified union, since it had failed to file certain required noncommunist affidavits and therefore was not entitled to relief under the program of the Board. On November 20, 1951, the Local notified plaintiff that if plaintiff did not recognize the union the members would walk out. Plaintiff said it could not recognize the Local until it had been certified by the Board. The union employes immediately walked out. The plant was picketed. The first day the pickets carried banners bearing the words "On Strike." The next day the banners were worded: "Faribault Daily News REFUSES TO NEGOTIATE with Local Union 739, A. F. of L." Later the banners read: "Faribault Daily News UNFAIR to Typographical Union Local 739 A. F. L." The strike was peaceful.

Plaintiff thereupon instituted an action asking that the union and its members be enjoined and restrained from picketing plaintiff's place of business unless and until an organization was duly authorized as a collective bargaining agent and until appropriate notice of intention to strike was filed with the state labor conciliator, and that all picketing and banners carried be peaceful and truthful. After an ex parte hearing, the court issued a temporary restraining order in form and terms as prayed for. The required bond was furnished. The court further ordered that defendants at a specified time and place show cause why a temporary injunction of like purport and effect should not be granted to continue in full force and effect until final judgment should be entered. Before hearing was had on the order to show cause, the writ of prohibition, petitioned for by defendants, was issued by this court restraining the district court from enforcing the temporary restraining order it had issued, from holding a hearing on the order to show cause, and from holding any further proceeding in the matter.

The main question involved is: In a labor dispute affecting interstate commerce, does the state court have jurisdiction to restrain peaceful picketing in furtherance of a strike for a lawful purpose for failure to comply with a state statute (M. S. A. 179.06) requiring the service of a ten-day notice of intention to strike? In answering this question, careful consideration must be given to the federal and state statutes involved and the federal court decisions. Section 7 of the National Labor Relations Act, as amended, 29 USCA, § 157 (the so-called Taft-Hartley Act), reads as follows:

*"Rights of Employees. Sec. 7.* Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, * * *."

Minnesota has a similar statute, § 179.10, subd. 1, which reads:

"Employees shall have the right of self-organization and the right to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in *lawful,* concerted activities for the purpose of collective bargaining or other mutual aid or protection; * * *." (Italics supplied.)

It is apparent that the two statutes are identical in meaning and almost identical in wording, except for the italicized word "lawful," which is found in the state statute and not found in the federal statute. The words "concerted activities" used in both statutes include strike action. When the state statute used the words "lawful, concerted activities" it must refer to lawful concerted action under Minnesota statutes.

The particular Minnesota statute which the legislature must have had in mind when it incorporated therein the word "lawful" is § 179.06, which provides first of all the procedure for the employer and the representative of employe or labor organizations to endeavor in good faith to reach an agreement respecting demands from either side. If no agreement is reached, the statute provides

that a notice of intention to strike or lockout may be given, *"but it shall be unlawful for any labor organization* or representative *to institute* or aid in the conduct of *a strike* or for an employer to institute a lockout, *unless notice of intention to strike* or lockout *has been served* by the party intending to institute a strike or lockout *upon the labor conciliator and the other parties to the labor dispute at least ten days before the strike* or lockout *is to become effective."* (Italics supplied.) Failure to serve the ten-day notice of intention to strike is made an unfair labor practice under § 179.11(2), which reads:

"It shall be an unfair labor practice:

\* \* \* \* \*

"(2) For any employee or labor organization to institute a strike if the calling of such strike is in violation of sections 179.06 or 179.07;"

Thus, under the Minnesota statute, calling a strike without the service of the ten-day notice of intention to strike is an unfair labor practice and unlawful.

Plaintiff admits that an application for a writ of prohibition is an appropriate means to test the jurisdiction of the state court; that plaintiff is engaged in interstate commerce; that congress does have the authority under the commerce clause to enact legislation in the field of labor disputes where interstate commerce is involved; that where there is a conflicting or concurrent provision in the state and federal act the federal act preëmpts the field, but that the conflicting or concurrent provisions must be in the particular provision; that a labor dispute exists here within the meaning of both federal and state acts; that a strike for recognition is a strike for a lawful purpose; that the picketing here is peaceful; and that there is a right to strike and to conduct peaceful picketing as an exercise of the right of free speech, but that such rights are not unqualified or uncontrolled rights. In the situation we have here, defendants contend that the state court has no jurisdiction to restrain peaceful picketing for a lawful purpose for failure to comply

with § 179.06, requiring the service of a ten-day notice of intention to strike, and that the state court may not by attempted exercise of jurisdiction under a state law limit the exercise of rights guaranteed to employes by § 7 of the Taft-Hartley Act, namely, the unconditional right to strike and to carry on other concerted activities.

■ Congress exercised and asserted its constitutional power to regulate employer-employe relationships and labor disputes in the field of interstate commerce by enacting the National Labor Relations Act of 1935 and its amendment, the so-called Taft-Hartley Act, in 1947. In Norris Grain Co. v. Seafarers' International Union, 232 Minn. 91, 99, 46 N. W. (2d) 94, 100, we commented upon the effect of the above federal acts by stating:

"The law is now settled that where a case involves a labor dispute in the field of interstate or foreign commerce covered by the national Labor Management Relations Act, 1947, the National Labor Relations Board * * * has exclusive jurisdiction and the state courts have none. It is not a question of whether N. L. R. B. has acted or what its action will be, but rather whether congress has asserted its power to regulate that relationship. Pittsburgh Railways Co., etc., Employees' Case, 357 Pa. 379, 54 A. (2d) 891, 174 A. L. R. 1045; Linde Air Products Co. v. Johnson (D. C.) 77 F. Supp. 656."

It must be conceded that § 7 of the federal act and § 179.10, subd. 1, cover generally the same field of labor relations. Both acts provide that employes shall have the right of self-organization, the right to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection. The issue here is whether the federal act has so preempted the field in connection with the right of employes to strike that the Board has exclusive jurisdiction and the state courts have none where the strike is peaceful and for a lawful purpose. This is a labor dispute in the field of

interstate commerce. Where the labor dispute is in the field of interstate commerce and the strike is peaceful and in furtherance of a lawful purpose, may the state impose a requirement of a ten-day notice by employes of intent to strike on penalty of illegality, where the federal act imposes no such condition? May the state court exercise its jurisdiction under a state law to limit the exercise of rights guaranteed to employes by § 7 of the federal act?

At the hearing before the trial court, defendants indicated a willingness to proceed to apply to the state labor conciliator for an election and certification. Plaintiff said that it would be willing to negotiate any time the Local had been certified by the federal government, and that at that time it was unwilling to proceed before the state conciliator, "because there are legal authorities that preclude the state conciliator from taking jurisdiction in an instance like this." It admitted that the federal act has preëmpted the field insofar as certification is concerned. Both parties disclaim any intention of attacking the constitutionality of the state act, or any part thereof. The question here involves the application of part of the act to the facts in the case.

Section 7 of the federal act and § 179.10, subd. 1, parallel each other. Both confer upon employes the right of self-organization, the right to form labor organizations, to bargain collectively, and to engage in concerted activities. The only difference, as we have already pointed out, is that under the state act the concerted activities must be lawful. If the employes institute strike action without the giving of the ten-day notice of intention to strike, their strike action under the state act is unlawful. Section 8(d) of the federal act (29 USCA, § 158 [d]) requires written notice of a dispute to be given by the union, but only in cases where renewal of, or changes in, an already existing contract is sought. But, as stated, the federal law does not require the service of a notice of intention to strike by a union seeking a collective bargaining contract for the first time, or seeking to persuade the employer to recognize the union and to bargain and negotiate with it. The

state law requires a notice of intention to strike under all circumstances where a strike is contemplated.

Section 13 of the National Labor Relations Act, as amended (29 USCA, § 163), provides:

"Nothing in this Act, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right."

There is nothing in the National Labor Relations Act which conditions the calling of a strike such as is here involved. It must be admitted that the ten-day notice of an intention to strike, found in the Minnesota act, does impede, diminish, and qualify the right to strike, which right under our facts is unconditional and unqualified under the federal act. But, since the federal act makes no mention of a strike-notice condition, plaintiff claims that the federal legislation does not prohibit the state from imposing such a condition and that the state courts have the right to enforce it. It claims that, since it is clear that there is no concurrent or inconsistent provision, the state is free to regulate the conduct of its citizens even though the subject be a labor dispute and the employer be engaged in interstate commerce.

The lawfulness of a strike for union recognition is not here questioned. It cannot very well be, in view of what we said in Hanson v. Hall, 202 Minn. 381, 384, 279 N. W. 227, 229:

"Beyond question, it is lawful for workingmen to combine and to strike for the purposes of raising wages, shortening hours, improving working conditions, and securing union recognition. Unassailable also is their right to inform the public, by means of pickets bannering an employer's place of business, of their grievances which give rise to the strike."

In nine decisions, the Supreme Court of the United States has considered the question whether the National Labor Relations Act, and its amendment, the so-called Taft-Hartley Act, have, as stated in a dissent by Mr. Justice Frankfurter to the decision in Amal-

gamated Assn. v. Wisconsin Emp. Rel. Board, 340 U. S. 383, 402, 71 S. Ct. 359, 369, 95 L. ed. 364, 379, "so collided with State law as to displace it." In three of these cases, the court sustained the state law. In six the court did not do so. An analysis of these cases must be made in an attempt to determine the group into which our case falls. In doing so, we shall first consider the cases in which the state law and state action were sustained.

In Allen-Bradley Local v. Wisconsin Emp. Rel. Board (1942) 315 U. S. 740, 62 S. Ct. 820, 86 L. ed. 1154, the findings of fact of the board were, in part, to the effect that the employes engaged in mass picketing at all entrances; that they obstructed and interfered with the entrance to and egress from the factory; that they threatened bodily injury and property damage to other employes who desired to continue their employment; that the union by its officers and many of its members injured the persons and property of such employes; and that 14 individual appellants had engaged in various acts of misconduct, such as intimidating and preventing employes from performing their work by threats, coercion, and assault, and by damaging property of employes who continued to work. The state board entered an order against the union and its officers and employes, holding them guilty of unfair labor practices as defined by the Wisconsin law. The supreme court of Wisconsin affirmed the judgment of the circuit court sustaining and enforcing the board's order. The Supreme Court of the United States affirmed the Wisconsin court, and held that the federal act was not designed to preclude a state from enacting legislation limited to the prohibition or regulation of this type of employe or union activity. The court said (315 U. S. 748, 62 S. Ct. 825, 86 L. ed. 1164):

"* * * The Committee Reports on the federal Act plainly indicate that it is not 'a mere police court measure' and that authority of the several States may be exerted to control such conduct. Furthermore, this Court has long insisted that an 'intention of Congress to exclude States from exerting their police power must be clearly manifested.' * * * Congress has not made such employee

and union conduct as is involved in this case subject to regula-. tion by the federal Board. * * *

"* * *. Here, as we have seen, Congress designedly left open an area for state control. * * * It is not sufficient, however, to show that the state Act *might* be so construed and applied as to dilute, impair, or defeat those rights [*i. e.,* the rights secured by §§ 7, 9, and 10 of the federal act]. * * * the federal Act does not govern employee. or union activity of the type here enjoined. And *we fail to see how the inability to utilize mass picketing, threats, violence, and the other'devices which were here employed impairs, dilutes, qualifies or in any respect subtracts from any of the rights guaranteed and protected by the federal Act.* Nor is the freedom to engage in such conduct shown to be so essential or intimately related to a realization of the guarantees of the federal Act that its denial is an impairment of the federal policy. * * *

"* * * *It has not been shown that any employee was deprived of rights protected or granted by the federal Act or that the status of any one of them under the federal Act was impaired."* (Italics supplied.)

The court thus stated that the federally conferred right to concerted activity could not be directly diluted, impaired, or defeated by state regulation which would make impossible the exercise of the federal right, because the state regulation was so closely connected with the federal right. However, the activities of the employes in the Allen-Bradley case did not fall within the scope of *concerted activity* protected by the federal act, and therefore could be regulated by the state. A federal right was not violated. And the court said that it would not lightly infer that the passage of the federal act impairs state rights over such traditionally local matters as public safety and order, since the intent of congress to exclude states from exerting police power must be clearly manifested (315 U. S. 749, 62 S. Ct. 825, 86 L. ed. 1164) and that congressional intent does not appear where the state and federal acts are consistent. The court said (315 U. S. 751, 62 S. Ct. 826, 86 L. ed. 1165):

"* * * Since the state system of regulation, * * * can be reconciled with the federal Act and since the two as focused in this case can consistently stand together, the order of the state Board must be sustained * * *."

In International Union v. Wisconsin Emp. Rel. Board (1949) 336 U. S. 245, 69 S. Ct. 516, 93 L. ed. 651, the union instigated intermittent and unannounced work stoppages for the purpose of putting pressure on the employer. From November 6, 1945, to March 22, 1946, 26 such stoppages occurred. "The substantial issue" (336 U. S. 252, 69 S. Ct. 520, 93 L. ed. 662), said Mr. Justice Jackson for the majority in a five-to-four decision, "is whether Congress has protected the union conduct which the State has forbidden, and hence the state legislation must yield." In sustaining the power of the state to handle such a situation, the court said (336 U. S. 253, 69 S. Ct. 521, 93 L. ed. 662) :

"* * * the conduct here described is not forbidden by this Act and no proceeding is authorized by which the Federal Board may deal with it in any manner. While the Federal Board is empowered to forbid a strike, when and because its purpose is one that the Federal Act made illegal, it has been given no power to forbid one because its method is illegal—even if the illegality were to consist of actual or threatened violence to persons or destruction of property. Policing of such conduct is left wholly to the states. In this case there was also evidence of considerable injury to property and intimidation of other employees by threats and no one questions the State's power to police coercion by those methods."

The court stated that the case fell within the rule of the Allen-Bradley case, 315 U. S. 740, 62 S. Ct. 820, 86 L. ed. 1154, *supra*, saying (336 U. S. 254, 69 S. Ct. 521, 93 L. ed. 663) :

"* * * There is no existing or possible conflict or overlapping between the authority of the Federal and State Boards, because the Federal Board has no authority either to investigate, approve or forbid the union conduct in question. This conduct is governable by the State or it is entirely ungoverned."

The third case in this group is Algoma P. & V. Co. v. Wisconsin Emp. Rel. Board (1949) 336 U. S. 301, 69 S. Ct. 584, 93 L. ed. 691. In that case, the board ordered the employer to cease and desist from giving effect to the maintenance-of-membership clause, to offer reinstatement to the employe who had been discharged for refusing to pay union dues, and to make him whole for any loss of pay. The order was sustained by the supreme court of Wisconsin as against the objections of the employer and the union that the jurisdiction of the state board was ousted by the exclusive authority of the National Labor Relations Board, and that the state statute was repugnant to the federal act. In 1943, under pressure from the Department of Labor and the War Labor Board, the employer agreed to a maintenance-of-membership clause in its contract with the union. That clause was carried over from year to year and was part of the 1946 contract. Such maintenance-of-membership contract was an unfair labor practice under the Wisconsin act. The court held that the federal act did not preëmpt the power of the state to enforce a statute making it an unfair labor practice to insert union security (maintenance-of-membership) clauses in collective bargaining contracts, unless approved by a two-thirds vote of employes. The court rejected the argument that § 8(a) (3) of the National Labor Relations Act (29 USCA, § 158[a][3]) affirmatively permitted security clauses if approved by a majority, and stated that this section (336 U. S. 307, 69 S. Ct. 588, 93 L. ed. 699) "merely disclaims a national policy hostile to the closed shop or other forms of union-security agreement." Had the sponsors of the National Labor Relations Act meant to deny effect to state policies inconsistent with the unrestricted enforcement of union shop contracts, surely they would have made their purpose manifest.

Section 10(a) of the Taft-Hartley Act (29 USCA, § 160[a]) provides:

"The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) affecting commerce. This power shall not be affected by any other means of adjustment or prevention that has been or may

be established by agreement, law, or otherwise: *Provided,* That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry [exceptions cited] even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is *inconsistent with the corresponding provision of this Act* or has received a construction inconsistent therewith." (Italics supplied.)

In affirming the Wisconsin court, the United States Supreme Court said (336 U. S. 313, 69 S. Ct. 591, 93 L. ed. 702) :

"* * * These words [the words above italicized] must mean that cession of jurisdiction is to take place only where State and federal laws have parallel provisions. Where the State and federal laws do not overlap, no cession is necessary because the State's jurisdiction is unimpaired."

The court continued (336 U. S. 313, 69 S. Ct. 591, 93 L. ed. 702) :

"Other provisions of the Taft-Hartley Act make it even clearer than the National Labor Relations Act that the States are left free to pursue their own more restrictive policies in the matter of union-security agreements."

It held that the effect given to the Wisconsin Employment Peace Act by the judgment below did not conflict with the enacted policies of congress. In the Norris Grain Co. case, we commented on the Algoma case by saying (232 Minn. 103, 46 N. W. [2d] 102) :

"* * * It would seem that the Algoma case is authority only for the proposition that a state is free to act in those fields not covered by the federal act."

As stated, in six cases the Supreme Court of the United States did not sustain the state law. We shall consider them in the order of their decision.

In Hill v. Florida (1945) 325 U. S. 538, 65 S. Ct. 1373, 89 L. ed. 1782, the court held that a state statute requiring a license for

business agents of labor unions, prescribing their qualifications, and making the issuance of the license depend upon a determination by certain state officers that they possessed the proper qualifications, was invalid as interfering with the "full freedom" which employes are given under the National Labor Relations Act to choose their own collective bargaining unit. It is a clear holding that where § 7 of the act confers a right upon employes that right cannot be limited by state action, even though there is no inconsistency between the provisions of the state act and the federal act. The federal right conferred is unlimited; and, once it is found that the employe actively is within federal protection, no state limitation is valid simply because the federal act does not deal specifically with the particular limitation. In a concurring opinion Mr. Chief Justice Stone said (325 U. S. 544, 65 S. Ct. 1376, 89 L. ed. 1786) :

"This, of course, does not mean that labor unions or their officers are immune, in other respects, from the exercise of the state's police power to punish fraud, violence, or other forms of misconduct, either because of the commerce clause or the National Labor Relations Act."

In Bethlehem Steel Co. v. New York State Labor Relations Board (1947) 330 U. S. 767, 67 S. Ct. 1026, 91 L. ed. 1234, the court held that the refusal of the National Labor Relations Board to certify foremen's unions for collective bargaining under the National Labor Relations Act did not leave state authorities administering a state labor law free to act. The court said (330 U. S. 773, 67 S. Ct. 1030, 91 L. ed. 1245) :

"* * * Where it [the National Labor Relations Act] leaves the employer-employee relation free of regulation in some respects, it implies that in such matters federal policy is indifferent, and since it is indifferent to what the individual of his own volition may do we can only assume it to be equally indifferent to what he may do under the compulsion of the state. Such was the situation in Allen-Bradley * * *, where we held that employee and union conduct over which no direct or delegated federal power was exerted by the

National Labor Relations Act is left open to regulation by the state. However, the power of the state may not so deal with matters left to its control as to stand 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' Hill v. Florida, * * *."

The state and federal acts concerning representation applied to the same relationship and involved the same persons, but the agencies were governed by different standards. The court there noted that if the state law were permitted application two agencies would assert control over the same subject matter, and that where such administrative conflict was probable the federal law would be supreme.

In La Crosse Tel. Corp. v. Wisconsin Emp. Rel. Board (1949) 336 U. S. 18, 69 S. Ct. 379, 93 L. ed. 463, the court held that a state employment relations board could not exercise jurisdiction to determine the appropriate bargaining representative or unit of representation of employes of an employer engaged in interstate commerce, although the National Labor Relations Board had not assumed jurisdiction in the matter, where the latter had not exercised its statutory power to cede its jurisdiction to a state agency. In that case, the Wisconsin Employment Relations Board, at the instance of a labor union in rivalry with the union with which an employer had theretofore entered into a collective bargaining agreement to continue from year to year unless terminated by specified notice, directed that a plant election be held, and certified the rival union as the collective bargaining representative. Both the employer and the ousted union brought an action to have the certification set aside as not within the state board's jurisdiction. The court said (336 U. S. 25, 69 S. Ct. 382, 93 L. ed. 469):

"* * * This employer is concededly engaged in interstate commerce; and the industry is one over which the National Board has consistently exercised jurisdiction. The Wisconsin Act provides that a majority of employees in a single craft, division, department or plant of an employer may elect to constitute that group a sep-

arate bargaining unit. § 111.02(6). The federal act leaves that matter to the discretion of the board. When under those circumstances the state board puts its imprimatur on a particular group as the collective bargaining agent of employees, it freezes into a pattern that which the federal act has left fluid."

The situation presented actual or potential conflict, both in actual agency order and in administrative action. Even in the absence of actual conflict, the resulting uncertainty was disruptive of peaceful labor relations which the federal government sought to encourage.

In Plankinton Packing Co. v. Wisconsin Emp. Rel. Board (1950) 338 U. S. 953, 70 S. Ct. 491, 94 L. ed. 588, the court in a brief per curiam decision reversed the judgment of the Wisconsin supreme court, basing its decision on Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U. S. 767, 67 S. Ct. 1026, 91 L. ed. 1234, and La Crosse Tel. Corp. v. Wisconsin Emp. Rel. Board, 336 U. S. 18, 69 S. Ct. 379, 93 L. ed. 463, cases which we have already referred to. In the Plankinton case (255 Wis. 285, 38 N. W. [2d] 688), an employe resigned from the union. A copy of the resignation was mailed to the employer. Immediately the other employes, all members of the union, commenced a course of conduct intended to coerce and intimidate the employe who resigned from the union, and to cause his loss of employment, for the reason that he had exercised his right to refrain from membership in the union. Also, the union began a course of conduct intended to coerce, intimidate, and induce the employer to discharge the resigning employe for the same reason. As a result of the coercion, intimidation, and inducement, the employer discharged the employe. The Wisconsin court held that both the union and the employer were guilty of unfair labor practices under the statutes of Wisconsin and affirmed the order of the board, instructing the employer to offer the discharged employe immediate and full reinstatement and make whole the employe for any loss of pay he may have suffered. In reversing the Wisconsin court, it is evident that the basis of such reversal

was that the field was occupied by the federal act, and that the state court was without jurisdiction.

In International Union v. O'Brien (1950) 339 U. S. 454, 70 S. Ct. 781, 94 L. ed. 978, the court held that the field of regulation of peaceful strikes for higher wages was occupied and closed to concurrent state regulation by the National Labor Relations Act, as amended by the Taft-Hartley Act. The constitutionality of the strike vote provision of the Michigan labor mediation law was the question before the court. Employes struck without conforming to the prescribed state procedure. The strike was called to enforce demands for higher wages and was conducted peacefully. The Michigan law calls for a notice to be given "In the event the parties * * * are unable to settle any dispute * * *." This is to be followed by mediation, and, if that is unsuccessful, by a strike vote within 20 days, with a majority required to authorize such action. Under § 8(d) of the federal act (29 USCA, § 158[d]) the prescribed notice can be given 60 days before the contract termination or modification. The federal act thus permits strikes at a different and usually earlier time than the Michigan act, and does not require majority authorization for any strike. The court said (339 U. S. 458, 70 S. Ct. 783, 94 L. ed. 984) :

"* * * *Without question, the Michigan provision conflicts with the exercise of federally protected labor rights. A state statute so at war with federal law cannot survive.*" (Italics supplied.)

The court then cited the Plankinton, La Crosse, Bethlehem, and Hill cases above referred to. In referring to International Union v. Wisconsin Emp. Rel. Board, 336 U. S. 245, 69 S. Ct. 516, 93 L. ed. 651, *supra*, a case upon which Michigan chiefly relied, the court said that that case (339 U. S. 459, 70 S. Ct. 783, 94 L. ed. 984)—

"was not concerned with a traditional, peaceful strike for higher wages. The employees' conduct there was 'a new technique for bringing pressure upon the employer,' a 'recurrent or intermittent unannounced stoppage of work to win unstated ends.' * * * That activity we regarded as 'coercive,' similar to the sit-down strike

held to fall outside the protection of the federal Act in Labor Board v. Fansteel Metallurgical Corp. [1939] 306 U. S. 240, 59 S. Ct. 490, 83 L. ed. 627, 123 A. L. R. 599, and to the labor violence held to be subject to state police control in Allen-Bradley Local v. Wisconsin Board [1942] 315 U. S. 740, 62 S. Ct. 820, 86 L. ed. 1154. * * * Clearly, we reaffirmed the principle that if 'Congress has protected the union conduct which the State has forbidden * * * the state legislation must yield.' "

Thus the court in the O'Brien case held that the field of regulation of peaceful strikes for higher wages is occupied and closed to concurrent state regulations by the National Labor Relations Act, as amended by the Labor Management Relations Act, 1947, known as the Taft-Hartley Act.

The last and latest case in this group to be considered is Amalgamated Assn. v. Wisconsin Emp. Rel. Board (1951) 340 U. S. 383, 71 S. Ct. 359, 95 L. ed. 364. In that case, a state statute prohibiting strikes against public utilities and providing for compulsory arbitration for labor disputes after an impasse in collective bargaining has been reached was held to be invalid and in conflict with the National Labor Relations Act, as amended by the Taft-Hartley Act. The court said (340 U. S. 389, 71 S. Ct. 362, 95 L. ed. 372):

"* * * We have recently examined the extent to which Congress has regulated peaceful strikes for higher wages in industries affecting commerce. Automobile Workers v. O'Brien [1950] 339 U. S. 454, 70 S. Ct. 781, 94 L. ed. 978. We noted that Congress, in § 7 of the National Labor Relations Act of [July 5] 1935, as amended by the Labor Management Relations Act of [June 23] 1947, expressly safeguarded for employees in such industries the 'right * * * to engage in * * * concerted activities for the purpose of collective bargaining or other mutual aid or protection,' 'e. g., to strike.' We also listed the qualifications and regulations which Congress itself has imposed upon its guarantee of the right to strike, including requirements that notice be given prior to any strike upon termination of a contract, prohibitions on strikes for certain objectives declared unlawful by Congress, and special pro-

cedures for certain strikes which might create national emergencies. Upon review of these federal legislative provisions, we held, 339 U. S. at 457, 70 S. Ct. 783, 94 L. ed. 983:

" 'None of these sections can be read as permitting concurrent state regulation of peaceful strikes for higher wages. Congress occupied this field and closed it to state regulation. [Citing cases.]' " (Italics supplied.)

Continuing the court said (340 U. S. 394, 71 S. Ct. 365, 95 L. ed. 375):

"* * * In any event, congressional imposition of certain restrictions on petitioners' right to strike, far from supporting the Wisconsin Act, shows that Congress has closed to state regulation the field of peaceful strikes in industries affecting commerce. Automobile Workers v. O'Brien, 339 U. S. 457, 70 S. Ct. 783, 94 L. ed. 983, supra. And where, as here, the state seeks to deny entirely a federally guaranteed right which Congress itself restricted only to a limited extent in case of national emergencies, however serious, it is manifest that the state legislation is in conflict with federal law." (Italics supplied.)

In footnote 12 to the Amalgamated case, the court said (340 U. S. 390, 71 S. Ct. 363, 95 L. ed. 373):

"Our decision in O'Brien, supra, followed shortly after our reversal, per curiam, in Plankinton Packing Co., supra, where the Wisconsin Employment Relations Board had, with the approval of the State Supreme Court, ordered reinstatement of an employee discharged because of his failure to join a union, even though his employment was not covered by a union shop or similar contract. Section 7 of the Labor Management Relations Act not only guarantees the right of self-organization and the right to strike but also guarantees to individual employees the 'right to refrain from any or all of such activities,' at least in the absence of a union shop or similar contractual arrangement applicable to the individual. Since the N. L. R. B. was given jurisdiction to enforce the rights of the employees, it was clear that the Federal Act had occupied this

field to the exclusion of state regulation. Plankinton and O'Brien both show that *states may not regulate in respect to rights guaranteed by Congress in § 7."* (Italics supplied.)

See, also, Linde Air Products Co. v. Johnson (1948) (D. C.) 77 F. Supp. 656.

We have thus considered all the decisions of the Supreme Court of the United States directly applicable to the question presented. Citation of these cases forecloses the argument that might otherwise be made that the passage of the comprehensive federal labor relations act removes the entire field of labor relations from state control, except where jurisdiction is specifically granted. The court has definitely stated that the federal act is not a police act, and that in areas where the exercise of police power is called for the state and its courts have jurisdiction. In such a case, congress has not protected the union conduct which the state has forbidden, and the conduct is governed by the state. In connection with a maintenance-of-membership clause in a contract between an employer and a union, which was an unfair labor practice under the state act, the court held that the state's jurisdiction was unimpaired, since the field was not covered by the federal act. Algoma P. & V. Co. v. Wisconsin Emp. Rel. Board, 336 U. S. 301, 69 S. Ct. 584, 93 L. ed. 691. So in this area, as well as in the area involving the exercise of police power, congress has not acted, and the states are left to pursue their own policies, since such policies are not in conflict with the enacted policies of congress.

Section 7 of the federal act gives employes the right to strike, without any conditions or strings attached to it, where there is not in effect a collective bargaining contract. Where there is in effect a collective bargaining contract, § 8(d) of the federal act requires a notice. The Minnesota act in every case requires a ten-day notice of intention to strike. If the Minnesota act in this respect "impairs, dilutes, qualifies or in any respect subtracts from any of the rights guaranteed and protected by the federal Act," using language found in the Allen-Bradley case (315 U. S. 750, 62 S. Ct. 826, 86 L. ed. 1165), can it still be sustained? There can be no question

that under the federal act the employes under the facts of our case have an absolute right to strike. The federal act permits peaceful strikes for lawful objectives without qualifications. The state act gives a conditional or qualified right. Both acts cover the same field. Under the decisions, it would seem that the state statute cannot impose a conditional right on employes in interstate commerce where the federal law gives an absolute right. The state act says to the employes: "You have the right to strike only if," and then specifies the limitation or condition.

The ten-day notice of intention to strike may be considered a very salutary provision in connection with the preservation of industrial peace, and therefore very material or something quite so immaterial that the federal act or courts would take no offense; but in either case it must be admitted that it places a restriction on an otherwise unqualified right to strike.

The strike here involved is a peaceful strike for a lawful purpose, and affects employer and employes engaged in interstate commerce. It is not a case where the strike or picketing is for an unlawful purpose or where there is violence or threats of violence.

The O'Brien case, 339 U. S. 454, 70 S. Ct. 781, 94 L. ed. 978, and the Amalgamated case, 340 U. S. 383, 71 S. Ct. 359, 95 L. ed. 364, clearly hold that peaceful strikes for lawful purposes are protected by federal legislation and that that right cannot be abridged or conditioned by the states. In the Amalgamated case the court said, in speaking of certain sections of the Wisconsin statutes (340 U. S. 390, 71 S. Ct. 363, 95 L. ed. 373):

"None of these sections can be read as permitting concurrent state regulation of peaceful strikes for higher wages. Congress occupied this field and closed it to state regulation." It continued by saying that (340 U. S. 394, 71 S. Ct. 365, 95 L. ed. 375) "Congress has closed to state regulation the field of peaceful strikes in industries affecting commerce," and cited the O'Brien case. That language of the court is clear and all inclusive. It further said in a footnote (340 U. S. 391, 71 S. Ct. 363, 95 L. ed. 373): "Plankinton

and O'Brien both show that states may not regulate in respect to rights guaranteed by Congress in § 7."

We are of the opinion, therefore, that when interstate commerce is involved, the provision of the Minnesota act which requires a ten-day notice of intention to strike, which is the only provision involved here, is invalid, since it interferes with rights guaranteed by congress in § 7 of the federal act.

■ Plaintiff contends that the union has not filed the noncommunist affidavit required by the federal act, and therefore, not being accredited, has no authority to act. The Joint Conference Report of the Senate and House Committees which reported on the Labor Management Relations Act of 1947 states:

"It is to be observed that the primary strike for recognition (without a Board certification) was not prohibited."

In Teller, Labor Disputes and Collective Bargaining (1950 Supp.) § 398.94, the author states: "A primary strike for recognition may be called by a union though it is not certified," citing the Senate and House Conference Report above quoted.

In N. L. R. B. v. Dahlstrom Metallic Door Co. (1940) (2 Cir.) 112 F. (2d) 756, 757, 6 LRR Man. 746, 747, the court said:

"* * * The contention that bargaining was not mandatory until the Board had accredited Local No. 307 as bargaining agent is frivolous. An employer is under a duty to bargain as soon as the union representative presents convincing evidence of majority support."

Under § 7 of the act the right exists whether the union has or has not been certified as bargaining representative of the employes.

Plaintiff's contention is not sustained, and an uncertified union, unless otherwise prohibited, may lawfully strike. The right to strike under § 7 of the federal act is not conditioned on certification by the federal board.

The alternative writ of prohibition heretofore issued is made absolute.

Mr. Justice Thomas Gallagher took no part in the consideration or decision of this case.

