McQUAY, INC., v. INTERNATIONAL UNION, UNITED
AUTOMOBILE, AIRCRAFT AND AGRICULTURAL
IMPLEMENT WORKERS OF AMERICA, C.I.O.,
AND OTHERS.[1, 2]

July 15, 1955.

No. 36,559.

*Helgesen & Kane* and *Francis X. Helgesen,* for relators.
*Dorsey, Colman, Barker, Scott & Barber, Henry Halladay, Curtis L.
Roy,* and *Lucius A. Smith,* for respondent.

NELSON, JUSTICE.
The plaintiff, McQuay, Inc., filed its complaint in the district
court for Rice county, Minnesota, invoking the injunctive powers of
the state courts alleging that the defendants were engaging in cer-
tain unfair labor practices in violation of M. S. A. 179.11, 179.13, and

[1]Reported in 72 N. W. (2d) 81.
[2]Certified to United States Supreme Court, November 30, 1955.

179.14 of the Minnesota labor relations act, c. 179. The district court thereupon issued a temporary restraining order on November 12, 1954, and a temporary injunction on November 22, 1954. Thereafter, on November 30, 1954, this court upon relation of defendants issued an order directed to the Honorable Axel B. Anderson, judge of the district court, fifth judicial district, to show cause why a permanent and absolute writ of prohibition should not issue restraining the judge from enforcing the temporary injunction as issued.

No factual issues are presented in the case. The plaintiff is a Minnesota corporation engaged in the manufacture and shipment of its products in the cities of Minneapolis and Faribault, Minnesota. That it is engaged in interstate commerce is not disputed. The defendant union had been on strike since approximately June 10, 1954, at the plaintiff's plant at Faribault, Minnesota. The plaintiff alleged in its complaint that during the course of the strike the defendants did and threatened to do the following things:

"(a) Interfered with the operation of vehicles and the operators thereof when neither the owners nor operators of said vehicles were at the time parties to any strike;

"(b) Compelled or attempted to compel a number of persons to join a strike against their respective individual wills by threatened and by actual unlawful interference with the person or persons, immediate family or families or physical property of, and by assaulting or unlawfully threatening, said person or persons while they were in pursuit of lawful employment;

"(c) Interfered with the free and uninterrupted use of public roads in the City of Faribault, Rice County, Minnesota, and methods of transportation or conveyance thereon, and wrongfully obstructed ingress to and egress from plaintiff's plant in Faribault, Minnesota, the same then and there being a place of business and employment;

"(d) By mass picketing and a show or demonstration of force and threats of force and by other means, the defendants and other persons or parties to plaintiff unknown, but acting in concert with or as agents or representatives of said defendants, have intimidated and coerced plaintiff's employees, former employees, and prospective

employees, in violation of the statutes as hereinbefore alleged and in further violation of the rights of said employees, former employees, or prospective employees under Section 179.10 of Minnesota Statutes 1953."

The court, after a full hearing at which defendants' counsel appeared, found that the allegations of plaintiff's complaint and the facts stated by the personnel manager at the Faribault plant in a supporting affidavit were true. The court further found that these acts constituted a violation of the Minnesota labor relations act, c. 179, specifically §§ 179.11 and 179.13 thereof;[3] that the plaintiff was without other adequate remedy; and that the National Labor Relations Act, as amended by the Labor Management Relations Act

---

[3]Section 179.11 provides as follows:

"It shall be an unfair labor practice:

\* \* \* \* \*

"(6) For any person to interfere in any manner with the operation of a vehicle or the operator thereof when neither the owner nor operator of the vehicle is at the time a party to a strike;

"(7) For any employee, labor organization, or officer, agent, or member thereof, to compel or attempt to compel any person to join \* \* \* any strike against his will by any threatened or actual unlawful interference with his person, immediate family, or physical property, or to assault or unlawfully threaten any such person while in pursuit of lawful employment."

Section 179.11(10) provides that violations of (6) and (7) thereof are unlawful acts.

Section 179.13 provides as follows:

"Subdivision 1. It shall be unlawful for any person at any time to interfere with the free and uninterrupted use of public roads, streets, highways or methods of transportation or conveyance or to wrongfully obstruct ingress to and egress from any place of business or employment.

"Subd. 2. It is an unfair labor practice for any employee or labor organization to commit an unlawful act as defined in subdivision 1 of this section."

Section 179.14 provides in substance that when any unfair labor practice is threatened or committed, a suit to enjoin the same may be maintained in the district court of any county wherein such practice has occurred or is threatened and that in any such suit the provisions of §§ 185.02 to 185.19 shall not apply.

See, also, provisions as to rights of employees, former employees, or prospective employees under § 179.10.

of 1947, was without application since jurisdiction had been acquired by the district court of this state. The court issued a temporary injunction enjoining defendants from the commission of violence, enumerating the following acts as prohibited: Obstructing highways and plant entrances; interfering with vehicles and their operators; mass picketing; and assaults and threats of assaults, coercion, intimidation, and other interferences with plaintiff's personnel.

The sole issue for determination now before this court is whether the state courts of Minnesota have the power, when proceeding under the Minnesota labor relations act, to curb and prevent violence arising in the course of a labor dispute affecting interstate commerce. Did the trial court in this labor dispute have jurisdiction to enjoin the specific acts of alleged violence, and the continuation thereof, the court in nowise by its order interfering with peaceful picket line activity?

Defendants contend that congress since the passage of the Labor Management Relations Act of 1947 has pre-empted the field of labor relations to the extent of taking from the states the control of acts of violence in labor disputes affecting interstate commerce despite the decision to the contrary by the United States Supreme Court in Allen-Bradley Local v. Wisconsin Board, 315 U. S. 740, 62 S. Ct. 820, 86 L. ed. 1154, and the courts' adherence in general to the doctrine therein announced. The defendants make two specific points in their argument: First, that the Allen-Bradley decision was rendered in 1942 before the amendment of the National Labor Relations Act and thus it construed the National Labor Relations Act of that day which dealt only with unfair labor practices on the part of employers and left employee unfair labor practices to be dealt with and controlled by the states; but that, since the National Labor Relations Act was amended in 1947 so as to deal with employee unfair labor practices as well, the Labor Management Relations Act now takes from the states any and all control over violence when invoked in a labor dispute affecting interstate commerce. Second, the defendants contend that, even if it be true that the states are still free under the Taft-Hartley Act[4] to exercise control over violence in a labor dispute

---

[4]The Labor Management Relations Act of 1947.

affecting interstate commerce, such control may not be exercised if the state's labor act under which the procedure is taken makes such conduct an unfair labor practice and the injunctive power is invoked under such statute. Suffice it to say that practically identical arguments have been made in the cases cited, both state and federal, since the Taft-Hartley Act, yet no court of final authority has cut into the freedom of the states to exercise its inherent police power as a sovereign state whenever it was found necessary to deal with acts of violence or other threats to the peace within its borders.

A long line of decisions by the United States Supreme Court has demonstrated throughout that, while there has been a development cumulative in its effect restricting the power of the states to act in labor disputes affecting interstate commerce and congress has pre-empted the field in closing to state regulation the field of peaceful strikes in industries affecting such commerce, yet the court in these decisions has never failed to make it clear that congress has not withdrawn from the state its inherent power under its constitutional prerogatives to act to prevent violence and insure public safety to every citizen alike. See, Allen-Bradley Local v. Wisconsin Board, 315 U. S. 740, 62 S. Ct. 820, 86 L. ed. 1154; Hill v. Florida, 325 U. S. 538, 65 S. Ct. 1373, 89 L. ed. 1782; Bethlehem Steel Co. v. State Board, 330 U. S. 767, 67 S. Ct. 1026, 91 L. ed. 1234; La Crosse Tel. Corp. v. Wisconsin Board, 336 U. S. 18, 69 S. Ct. 379, 93 L. ed. 463; Auto. Workers v. Wisconsin Board, 336 U. S. 245, 69 S. Ct. 516, 93 L. ed. 651; Algoma Plywood Co. v. Wisconsin Board, 336 U. S. 301, 69 S. Ct. 584, 93 L. ed. 691; Auto. Workers v. O'Brien, 339 U. S. 454, 70 S. Ct. 781, 94 L. ed. 978; Bus Employees v. Wisconsin Board, 340 U. S. 383, 71 S. Ct. 359, 95 L. ed. 364; Garner v. Teamsters Union, 346 U. S. 485, 74 S. Ct. 161, 98 L. ed. 228; United Workers v. Laburnum Corp. 347 U. S. 656, 74 S. Ct. 833, 98 L. ed. 1025; Weber v. Anheuser-Busch, Inc. 348 U. S. 468, 75 S. Ct. 480, 99 L. ed. 546.

By the same decisions the United States Supreme Court continues to rule that congress has not withdrawn from the states the right to act to prevent violence; that congress designedly left open an area for state control, it having manifested no intention thus far to exclude states from exercising their police power. While the federal

labor board has the power to forbid a strike, because it is one that the federal act made illegal, congress has given no one the power to forbid one because its method is illegal—even if the illegality of the strike were to consist of actual or threatened violence to persons or destruction of property. So far the policing of such conduct has been left wholly to the states. In Auto. Workers v. Wisconsin Board, *supra,* in 1949, following the amendment of the National Labor Relations Act, the United States Supreme Court said in effect that, there being in that case also evidence of considerable injury to property and intimidation of other employees by threats, under the circumstances no one questions the state's power to police coercion by those methods.

Our own court has dealt with certain aspects of this problem in recent years in Norris Grain Co. v. Seafarers' International Union, 232 Minn. 91, 46 N. W. (2d) 94; Faribault Daily News, Inc. v. International Typographical Union, 236 Minn. 303, 53 N. W. (2d) 36; State ex rel. International Union, Local 1174, v. Finkelnburg, 236 Minn. 349, 53 N. W. (2d) 128.

In Faribault Daily News, Inc. v. International Typographical Union, 236 Minn. 303, 322, 53 N. W. (2d) 36, 46, this court said:

"* * * The [U. S. Supreme] court has definitely stated that the federal act is not a police act, and that in areas where the exercise of police power is called for the state and its courts have jurisdiction. In such a case, congress has not protected the union conduct which the state has forbidden, and the conduct is governed by the state."

The courts of other states have uniformly sustained the power of the state courts to enjoin violence in labor disputes, even in those cases where interstate commerce was affected. A most recent one is Wisconsin Board v. United Automobile, etc. 269 Wis. 578, 70 N. W. (2d) 191.[5]

[5]Oil Workers International Union v. Superior Court, 103 Cal. App. (2d) 512, 230 P. (2d) 71; Williams v. Cedartown Textiles Inc. 208 Ga. 659, 68 S. E. (2d) 705; Thayer Co. v. Binnall, 326 Mass. 467, 95 N. E. (2d) 193; Southern Bus Lines, Inc. v. Amalgamated Assn. 205 Miss. 354, 38 So. (2d) 765; State ex rel. Allai v. Thatch, 361 Mo. 190, 234 S. W. (2d) 1; Erwin Mills v. Textile Workers Union, 234 N. C. 321, 67 S. E. (2d) 372; Royal

We think it fair to say that the defendants concede that state power to curb violence remains unimpaired but for the exceptions they contend for in the present situation. Their contention here is that the activities in the instant case constitute violations of § 8(b) (1) (A) of the National Labor Relations Act as amended[6] and that this supplies justifiable grounds and a legal basis for saying that the state courts of Minnesota may not assert jurisdiction over them in an action brought under our state labor relations act, and, this, because it was brought under the state labor relations act and not by some other procedure invoking injunctive relief to protect the peace. To this our answer must be, after an examination of the provisions of the acts in question and the numerous decisions, state and federal, bearing upon the points involved, that the courts of this state may enjoin the commission of violence, prohibited in the state labor act, even if that violence also constitutes a violation of the federal labor act. The authorities support that conclusion. It has been reiterated and reaffirmed that, while the general principle

Cotton Mill Co. v. Textile Workers Union, 234 N. C. 545, 67 S. E. (2d) 755; Erwin Mills v. Textile Workers Union, 235 N. C. 107, 68 S. E. (2d) 813; Rice & Holman v. United Elec. Local 134, 3 N. J. Super. 258, 65 A. (2d) 638; Goodwins, Inc. v. Hagedorn, 303 N. Y. 300, 101 N. E. (2d) 697, 32 A. L. R. (2d) 1019; Art Steel Co. v. Velazquez, 280 App. Div. 76, 111 N. Y. S. (2d) 198; Wortex Mills v. Textile Workers Union, 369 Pa. 359, 85 A. (2d) 851; Wortex Mills v. Textile Workers Union, 380 Pa. 3, 109 A. (2d) 815; Lodge Mfg. Co. v. Gilbert, 195 Tenn. 403, 260 S. W. (2d) 154; International Molders Union v. Texas Foundries (Tex. Civ. App.) 241 S. W. (2d) 213, reversed on other grounds, 151 Tex. 239, 248 S. W. (2d) 460.

[6] 61 Stat. 141, 29 USCA, § 158(b) (1) (A), reads as follows:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 * * *."

61 Stat. 140, 29 USCA, § 157, reads as follows:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities * * *."

is that the states have no jurisdiction over activities which constitute unfair labor practices under the National Labor Relations Act and the Labor Management Relations Act, the power of the states being restricted thereby, nevertheless the inherent police power of each sovereign state to deal with acts of violence or other threats to the peace has at the same time received recognition and emphasis as to its continuing validity.

We are privileged to live, in this nation, under the protection of a representative free system of government with well-known checks and balances applied as between the executive, the legislative, and the judicial departments. It is a dual system of government. The individual citizen in his sovereign capacity and his enjoyment of local self-government under which liberty developed and became a reality is now as before surrounded by the township, the county, the state, the nation, like so many concentric circles, each serving a double purpose, each invested with the greatest possible jurisdiction. Thus, the court in the Allen-Bradley case gave its recognition to an existing local situation when it said that where a state acts to preserve law and order and to prevent violence it is (315 U. S. 749, 62 S. Ct. 825, 86 L. ed. 1164) "exercising its historic powers over * * * traditionally local matters." No argument thus far has ever convinced either congress or the courts of this country that we ought wholly to break down the lines which separate the states and thus compound the American people into one common mass. So, policing of conduct such as involved here has been left to the states. No decision cited has cast any doubt upon it, and the states are left to continue their historic powers over traditionally local matters, and in the last analysis that is precisely what is involved here. A state has the primary responsibility for the protection of its citizens, and each state, a republic within itself, indestructible and yet a part of the indissoluble union as a whole, is charged with the power to discharge that responsibility, as a basic concept of our system, which none can thrust aside lightly. The state is in the first instance responsible for the public safety, the welfare, the peace, and the health of the citizen. And the principle is thoroughly established that the exercise by the state of its police power is valid if not superseded by federal

action and is superseded only where the repugnance or conflict is so direct and positive that two acts, one state and one federal, cannot be reconciled or consistently stand together. Kelly v. Washington, 302 U. S. 1, 58 S. Ct. 87, 82 L. ed. 3; see, Maurer v. Hamilton, 309 U. S. 598, 60 S. Ct. 726, 84 L. ed. 969.

In Garner v. Teamsters Union, 346 U. S. 485, 74 S. Ct. 161, 98 L. ed. 228, the employer sought to enjoin peaceful picketing by state action. Of course, that situation is clearly distinguishable from the situation presented in the case at bar, and the Supreme Court of the United States distinguished the situation there from that in the Allen-Bradley case by saying (346 U. S. 488, 74 S. Ct. 164, 98 L. ed. 238) :

"This is not an instance of injurious conduct which the National Labor Relations Board is without express power to prevent and which therefore either is 'governable by the State or it is entirely ungoverned.' In such cases we have declined to find an implied exclusion of state powers. International Union v. Wisconsin Board, 336 U. S. 245, 254. *Nor is this a case of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes. We have held that the state still may exercise 'its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.'* Allen-Bradley Local v. Wisconsin Board, 315 U. S. 740, 749." (Italics supplied.)

Recently in United Workers v. Laburnum Corp. 347 U. S. 656, 74 S. Ct. 833, 98 L. ed. 1025, the court therein repeated the language quoted above from the Garner case with approval, and more recently, in 1955, the United States Supreme Court in Weber v. Anheuser-Busch, Inc. 348 U. S. 468, 482, 75 S. Ct. 480, 488, 99 L. ed. 546, 558, in setting aside a state court's injunction against picketing and commenting on the nature of the picketing and the law applicable to it, said:

"* * * We do not read this as an unambiguous determination that the IAM's conduct amounted to the kind of mass picketing and overt threats of violence which under the Allen-Bradley Local case give the state court jurisdiction."

So, in reliance on the pronouncements of the United States Supreme Court in its recognition of the exercise of the state's historic powers over traditionally local matters leaving the policing of such conduct wholly to the states, the supreme court of the state of Wisconsin recently in Wisconsin Board v. United Automobile, etc. 269 Wis. 578, 587, 70 N. W. (2d) 191, 195, felt clearly justified in saying, referring to the Allen-Bradley case, that "Neither age nor new legislation have withered the authority of that decision when the facts to which it applied are present, as shown by the foregoing citations."

It is therefore clear that the contention of the defendants that the trial court below was without jurisdiction because respondent's action was brought under the Minnesota labor relations act, c. 179, is without merit. The state having the power to act, that power is not affected by the form that is taken in the exercise of that power. On the authorities cited and in the absence of any controlling decision to the contrary, this court must reject defendants' challenge to the jurisdiction of the trial court and quash the order to show cause.

The order to show cause is quashed and the action of the trial court is sustained.

Mr. Justice Thomas Gallagher took no part in the consideration or decision of this case.