

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

October 27, 1961

Mr. R. B. Latting, Commissioner
Bureau of Labor Statistics
Austin, Texas

Opinion No. WW-1181

Re: Whether the Federal Government,
by exempting the shrimp canning
and processing industry from the
overtime provisions of the Fair
Labor Standards Act, has pre-
empted this field of legislation to
the extent that Article 5172a,
Vernon's Civil Statutes, regulat-
ing the maximum working hours
of females, is invalid.

Dear Sir:

You have requested an opinion of this office as to whether the
Federal Government, by exempting the shrimp canning and processing
industry from the overtime provisions of the Fair Labor Standards Act,
has pre-empted this field of legislation to the extent that Article 5172a,
Vernon's Civil Statutes, regulating the maximum working hours of female
employees, is invalid.

The Fair Labor Standards Act, 29 United States Code, Section
201, et seq., as amended May 5, 1961, provides for maximum hours
for employees under the Fair Labor Standards Act. Section 207(a)
reads as follows:

"Except as otherwise provided in this section, no
employer shall employ any of his employees who is en-
gaged in commerce or in the production of goods for com-
merce for a workweek longer than forty hours, unless such
employee receives compensation for his employment in
excess of the hours above specified at a rate not less than
one and one-half times the regular rate at which he is
employed."

Section 213(b), 29 United States Code, as amended May 5, 1961, provides for certain exemptions to the maximum hours section, the applicable exemption being set out as follows:

"The provisions of section 207 shall not apply with respect to- . . . (4) any employee employed in the canning, processing, marketing, freezing, curing, storing, packing for shipment, or distributing of any kind of fish, shellfish, or other aquatic forms of animal or vegetable life, or any by-product thereof; . . ."

Section 218, 29 U.S.C.A., reads as follows:

"No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter, . . ."

Section 1, Article 5172a, Vernon's Civil Statutes, reads as follows:

"No female shall be employed in any factory, mine, mill, workshop, mechanical or mercantile establishment, hotel, restaurant, rooming house, theater, moving picture show, barber shop, beauty shop, road side drink and/or food vending establishment, telegraph, telephone or other office, express or transportation company, or any State institution, or any other establishment, institution or enterprise where females are employed, for more than nine (9) hours in any one calendar day, nor more than fifty-four (54) hours in any one calendar week."

Section 5a, Article 5172a, as amended by Acts of the 57th Legislature, page 978, Chapter 425 (S. B. 352), Vernon's Texas Sessions Laws, effective June 17, 1961, reads, in part, as follows:

"In case of extraordinary emergencies, such as great public calamities, or where it becomes necessary for the protection of human life or property, longer hours may be worked; but for such time not less than one and

one-half times the regular rate at which such female
is employed shall be paid to such female with her con-
sent.   Unless otherwise provided herein, any female
employee who works more than forty (40) hours per
week shall be entitled to receive from the employer
pay at a rate not less than one and one-half times the
regular rate for which such female is employed for all
hours in excess of nine (9) hours per day, provided the
employee actually works more than forty (40) hours per
week. "

Early in our constitutional history, it was settled that the fact that
Congress has power to regulate commerce among the several States does
not exclude State legislation in the exercise of the police power, even
though it may affect such commerce.  Willson v. Blackbird Creek Marsh
Co., 2 Pet. 246 (1829); Cooley v. Board of Wardens, 12 How. 299 (1951).

It is also well settled that where a State Statute and a Federal
Statute can be reconciled or can consistently stand together both acts
should be allowed to stand.   Therefore, unless the repugnance or con-
flict of the State and Federal Statutes is so obvious that the two acts
cannot be reconciled or stand together, they will be allowed to stand.
Sinnott v. Davenport, 22 How. 227 (1859); Missouri, K. & T. R. Co.
v. Haber, 169 U.S. 613, 623 (1897).

In Kelly v. Washington, 302 U.S. 1 (1937), which is in accord
with the immediate foregoing cases, the following statement appears at
page 10:

". . . States are thus enabled to deal with local
exigencies and to exert in the absence of conflict with
federal legislation an essential protective power.   And
when Congress does exercise its paramount authority,
it is obvious that Congress may determine how far its
regulation shall go.   There is no constitutional rule which
compels Congress to occupy the whole field.   Congress
may circumscribe its regulation and occupy only a limited
field.   When it does so, state regulation outside that limi-
ted field and otherwise admissible is not forbidden or dis-
placed.   The principle is thoroughly established that the
exercise by the State of its police power, which would be
valid if not superseded by federal action, is superseded

only where the repugnance or conflict is so 'direct
and positive' that the two acts cannot 'be reconciled
or consistently stand together.' "

There is nothing in the Fair Labor Standards Act dealing with a
limitation on daily hours worked for the shrimp canning and processing
industry.  The Federal Act prohibits working more than forty hours per
week for any industry "unless such employee receives compensation for
his employment in excess of the hours above specified at a rate not less
than one and one-half times the regular rate at which he is employed. "
Section 207(a), 29 U. S. C. A.  On the face of the two statutes, there is
no conflict concerning regulation of the number of daily hours worked.
The state law prohibits employment for more than nine hours in any one
calendar day, whereas the federal law is silent.  The state law prohibits
employment for more than fifty-four hours in any one calendar week;
whereas the federal law is silent as to the shrimp canning and processing
industry and requires only that time and a half be received by an employee
who works more than forty hours in any one work week for those indus-
tries not exempt.  There being nothing in the Federal Fair Labor Stan-
dards Act dealing with a limitation on daily hours worked in the shrimp
canning and processing industry, there is no conflict between the State
law and the federal Act.

An application of this principle, involving the comparable field
of labor legislation, appears in Allen-Bradley Local No. 1111 v. W. E. R. B.,
315 U. S. 740 (1942).  There it was asserted that by reason of a claimed
conflict between the Wisconsin Labor Relations Act and the National Labor
Relations Act, an order of the Wisconsin Employment Relations Board,
under state law, could not stand.  The United States Supreme Court, in
affirming the Supreme Court of the State of Wisconsin, pointed out one
of the fundamental rules to be applied in determining contentions of this
type.  We quote the following excerpt from page 748:

"We agree with the statement of the United
States as amicus curae that the federal Act was not
designed to preclude a state from enacting legislation
limited to the prohibition or regulation of this type of
employee or union activity.  The committee reports
on the federal Act plainly indicate that it is not a
'mere police court measure' and that authority through
the several states may be exerted to control such con-
duct.  Furthermore, this Court has long insisted that

'an intention of Congress to exclude states from
exerting their police power must be clearly mani-
fested. ' (Citing cases). "

Then, after reviewing other decisions and the basic provisions
of both state and federal law, the Court pointed out at page 750 that
there was no conflict because:

"But, as we have said, the federal Act does
not govern employee or union activity of the type
here enjoined. * * * Since the state system of regu-
lation, as construed and applied here, can be recon-
ciled with the federal Act and since the two as focused
in the case can consistently stand together, the order
of the state board must be sustained under the rule
which has long obtained in this Court. "

In Reid v. Colorado, 187 U. S. 137 (1902) the Court held that,
"It should never be held that Congress intends to supersede . or by its
legislation suspend the exercise of the police powers of the State, even
when it may do so, unless its purpose to effect that result is clearly
manifested. . . . The principle is universal that legislation, whether
by Congress or by a State, must be taken to be valid, unless the con-
trary is made clearly to appear; . . . "

The numerous cases concerning the allowable area of State law
leave no doubt that State action cannot be set aside on the basis of vague
generalities about Congress having "pre-empted the field, " but rather
it is clearly pointed out that Congress may limit its regulations allowing
State legislation to stand outside that limited field.   State action is not
curtailed unless the State laws are clearly contradictory to the federal
statutes and unless it can be shown the State statutes are directly and
positively repugnant to the federal statutes so that they cannot be recon-
ciled and cannot stand together.   The intention of Congress to exclude
States from exerting their police power must be clearly manifested.

We think it evident that Congress was, in passing this legislation,
well aware of the differences in local circumstances and that it was
desirable to leave treatment of these matters to the different localities.
In the United States Code Congressional and Administrative News (April-
May, 1961), at page 1394, in discussing one of the exemptions of the
Fair Labor Standards Act, it is stated that:

" . . . These exemptions were motivated by a desire
on the part of President Roosevelt, the sponsors of
the original legislation, and Congress as a whole to
exclude local business from the act. Congress felt that
the matter of regulating the minimum wages and maxi-
mum hours of the retail and service establishments
should be left to the States, in view of the wide varia-
tion in the operating practices of such establishments
(81 Congressional Record 7648). The States have been
doing their job in this connection. For example, during
the past year Massachusetts, New Hampshire, New York,
Utah, Vermont, Wisconsin, the District of Columbia, and
Puerto Rico raised their minimums. So did Pennsylvania,
effective in January 1961. In all, some 33 States, the
District of Columbia, and Puerto Rico have wage and hour
laws regulating retailing. "

Therefore, from the above, it seems apparent that it was the in-
tent, when the original Bill was passed by the Congress, that any regula-
tions concerning these exempt establishments or industries should be
left to the States; and consequently a large percentage of the States have
passed legislation to cover some of the exemptions in the federal act.

It is also apparent that Congress by enacting Section 218 of the
Fair Labor Standards Act, clearly intended that State laws providing
higher standards on a given subject matter should prevail. We think
the language of 218 is broad enough to include the exemptions contained
in Section 213 of the Act. The language in Section 218 is strong and in-
clusive when it provides that" "No provision of this chapter or of any
order thereunder shall excuse noncompliance with any Federal or State
law or municipal ordinance establishing a minimum wage higher than the
minimum wage established under this chapter or a maximum workweek
lower than the maximum workweek established under this chapter, . . ."
(Emphasis added)

Not only does the express language of applicable sections of the
federal law support the conclusion that State laws which are stricter
than the Fair Labor Standards Act should prevail, but pertinent court
decisions and administrative rulings further support the conclusion.

In the case of Eastern Sugar Associates v. Peña, 222 F. 2d 934
(1955), Peña brought suit against his employer, Eastern Sugar Associates,

for unpaid overtime compensation which he claimed was due under the laws of Puerto Rico.  The Puerto Rican law was similar to Article 5172a in that it restricted daily employment to eight hours of work and provided for overtime for hours worked in excess of eight.  In this case, the Court said:

> "Section 18 of the Fair Labor Standards Act provides that no provision of that act "shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this Act or a maximum workweek lower than the maximum workweek established under this Act".  Thus the States, and this undoubtedly includes the Commonwealth of Puerto Rico, are given freedom of action to establish higher standards than those established by the Federal act.  Puerto Rico has done so by Act No. 379, Laws of Puerto Rico, 1948, under which this suit was brought. . . .

> ". . . . .

> "With respect to the first two bases for the plaintiff's claim, that is, daily work after eight hours and work on days of rest, he claims time and a half and double time respectively under Section 5 of Act No. 379.  Since there is no similar provision in the federal law it is perfectly clear that this part of his claim is solely under the local law."

The Court then reviewed plaintiff's claim which sought overtime for work performed in excess of forty hours in one week and concluded that the plaintiff's entire claim "is necessarily based on the local law and not upon the federal Fair Labor Standards Act."  Therefore, the decision of the Puerto Rico Supreme Court which rejected the employer's defense under the federal law was affirmed.

On February 8, 1950, the Attorney General of Montana issued his Opinion 89, this opinion being summarized in the Commerce Clearing House Labor Law Reports, Wages and Hours, Volume 1, page 36, 620.  This opinion states as follows:

"The Montana eight-hour day constitutional
provision and enforcement statutes, in so far as the
same apply to employees in seasonal industries, and
employees engaged in first-processing industries,
supersede the F. L. S. A. since it provides a maximum
work week shorter than the work week established
under the Act for such employees."

In short, the states may legislate on matters in the general
domain of commerce so long as Congress is silent. And even when the
Congress has spoken, the states may legislate when the federal enact-
ment does not clearly indicate Congressional intent to preempt the par-
ticular area involved.

If Congress, by exempting the Shrimp Industry from the mini-
mum hours provisions of the Fair Labor Standards Act and refusing to
legislate on that, had intended to wipe out the States' police power as to
these matters, it would have been an easy matter to express this inten-
tion in clear, distinct and unambiguous language. However, neither ex-
pressly nor by indirection did the Fair Labor Standards Act displace what-
ever police power the States may have to deal with maximum hours pro-
visions. To repeat what was said in Allen-Bradley Local v. Board, supra,
"We will not lightly infer that Congress by the mere passage of a federal
Act has impaired the traditional sovereignty of the several States" over
such police matters as are the concern of Article 5172a. Therefore, by
refusing to legislate as to the exempted industries, Congress did not for-
bid the States from so legislating.

The only issue before us is whether Texas, under Article 5172a,
is free to regulate the shrimp canning and processing industry where
Congress has not done so.

By exempting the Shrimp Industry from the overtime provisions of
the Fair Labor Standards Act, there is no basis for the conclusion that
Texas is thereby denied the right to pass legislation to regulate the hours
of females employed in the shrimp canning and processing industry. We
do not believe that any provisions of the Fair Labor Standards Act, includ-
ing the exemptions thereunder, displace whatever police power the States
might have to deal with those aspects of this industry as to which Congress
refused to legislate.

It is, therefore, the opinion of this office that the federal government, by exempting the shrimp canning and processing industry from the overtime provisions of the Fair Labor Standards Act, has not pre-empted this field of legislation, and Article 5172a, Vernon's Civil Statutes, regulating the working hours of female employees is valid.

## SUMMARY

By exempting the shrimp canning and processing industry from the overtime provisions of the Federal Fair Labor Standards Act, the Federal government has not pre-empted this field of legislation, and Article 5172a, Vernon's Civil Statutes, regulating the working hours of female employees, is valid.

Very truly yours,

WILL WILSON
Attorney General of Texas

By _Dudley D. McCalla_
Dudley D. McCalla
Assistant Attorney General

DDM:lmc

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman
John Reeves
Iola B. Wilcox
Morgan Nesbitt
Coleman Gay, III

REVIEWED FOR THE ATTORNEY GENERAL
BY: Houghton Brownlee, Jr.