## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Deep Dalal

### January 26, 1996

### Case No. (Criminal) M-3023

BY JUDGE ARTHUR B. VIEREGG, JR.

On November 20, 1995, the defendant, Mr. Deep Dalal was indicted for driving while intoxicated in violation of Virginia Code § 18.2-266. On August 20, 1995, he had been arrested on that charge by Officer C. D. Smeal of the Metropolitan Washington Airports Authority ("MWAA") police force. The arrest took place within the boundaries of the Dulles International Airport ("Dulles"), which is situated in Fairfax County, Virginia.

### I. *Background of the Case*

On January 4, 1996, Dalal appeared and contested the validity of his arrest on the grounds that Officer Smeal was without authority to arrest him and that this court was without jurisdiction to try him. Dalal relied upon arguments contained in a Motion to Dismiss, each based on the fact that the arresting officer was a MWAA police officer or that he was arrested on charges allegedly committed at Dulles. Dalal's arguments are based on or otherwise implicate federal and Virginia legislation related to the creation of the MWAA police force and judicial jurisdiction over traffic offenses and criminal acts committed at Dulles.

### A. *The Transfer Act*

In 1986, the United States Congress enacted the Metropolitan Washington Airports Act of 1986 ("Transfer Act") authorizing the creation of a regional airport authority by the District of Columbia and the Commonwealth of Virginia to lease and manage Dulles and Washington National

Airport ("Washington National"). 49 U.S.C. App. §§ 2451-2461. These airports had been the only major commercial airports owned and operated by the federal government.

Of particular importance for purposes of this case, are the following sections of the Transfer Act:

> § 2456. *Airports Authority*
>
> (a) *Powers conferred by Virginia and the District of Columbia*
>
> The Airports Authority shall be a public body corporate and politic, having the powers and jurisdiction as are conferred upon it jointly by the legislative authority of the Commonwealth of Virginia and the District of Columbia or by either of the jurisdictions and concurred in by the legislative authority of the other jurisdictions, but at a minimum meeting the requirements of this section . . . .
>
> (c) *General authorities*
>
> The Airports authority shall be authorized
>
> (1) to acquire, maintain, improve, operate, *protect*, and promote the Metropolitan Washington Airports for public purposes [emphasis added].
>
> § 2458. *Relationship to and effect of other laws*
>
> (c) *Police power*
>
> The Commonwealth of Virginia shall have concurrent police power authority over the Metropolitan Washington Airports, and the courts of the Commonwealth of Virginia may exercise jurisdiction over Washington National Airport.
>
> § 2460. *Separability*
>
> Except as provided in section 2456(h) of this title, if any provision of this subchapter or the application thereof to any person or circumstance is held invalid, the remainder of this subchapter and the application of such provision to other persons or circumstances shall not be affected thereby.

B. *Virginia Statutes*

In 1987, in conjunction with the creation of the MWAA, the Virginia General Assembly enacted statutes recognizing the jurisdiction of the courts of the Commonwealth with respect to Dulles and Washington National and the MWAA's authority to create a regular airport police force.

Acts of Assembly of 1987, Chapter 665. Pertaining portions of this Virginia legislation follow:

§ 6. Authority rules and regulations . . . .

H. With respect to the violation of any statute of the Commonwealth . . . having the force and effect of law occurring at the Authority Facilities:

1. The matter shall be within the jurisdiction of the state courts of the political subdivision where the violation occurred; violations occurring at Washington National Airport shall be within the jurisdiction of the courts for Arlington County . . . .

§ 7. Police.

A. The Commonwealth hereby grants, accepts and agrees to concurrent police power authority over the Metropolitan Washington Airports as provided in Section 6009(c) of the Metropolitan Airports Act of 1986.

B. The Authority is authorized to establish and maintain a regular police force and to confer police powers to be exercised with respect to offenses occurring on the Authority Facilities upon its employees meeting the minimum requirements of the Department of Criminal Justice Services.

Such police officers shall have all powers vested in police officers under Chapter 3 of Title 15.1 . . . Title 18.2, and Title 46.1 of the Code of Virginia and shall be responsible upon Authority Facilities and within 300 yards of the Facilities for enforcing the laws of the Commonwealth . . . .

Such police officers may issue summons to appear, or arrest on view or on information without a warrant as permitted by law, and conduct before any judicial officer of competent jurisdiction any person violating, upon Authority Facilities, any rule or regulation of the Authority, any ordinance or regulation of any local political subdivision, or any other law of the Commonwealth.

When the Transfer Act was enacted, Virginia law governing the operation of motor vehicles in Virginia was generally contained in Title 46.1 of the Virginia Code. However, in 1989, the General Assembly repealed Title 46.1 and enacted Title 46.2, many of the statutes of which were recodified and renumbered statutes contained in Title 46.1.

C. *Federal Decisions*

Despite the creation of the MWAA, in 1991, the United States Supreme Court held that the Transfer Act violated the separation of powers doctrine, because it created a Board of Review, partially comprised of members of Congress, which were empowered to override decisions of the MWAA's Board of Directors. *MWAA v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252 (1991). In response to this decision, in 1991, Congress enacted amendments to the Act, changing the powers of the Board of Review. The amended act was subsequently challenged, and on September 27, 1994, the United States Court of Appeals for the District of Columbia upheld a federal district court's decision that the Board of Review was unconstitutional, because it still violated the separation of powers doctrine. *Hechinger v. MWAA*, 36 F.3d 97 (D.C. Cir. 1994).

## II. *Decision*

A. *Unauthorized Police Force Argument*

Dalal first contends that Congress did not authorize the creation of a separate MWAA Police Department. He stresses the importance of the following language in the Transfer Act:

> The Commonwealth of Virginia shall have concurrent police power authority over the Metropolitan Washington Airports, and the courts of the Commonwealth may exercise jurisdiction over Washington National Airport.

Def. Br. at 2. He supposes that a grant of concurrent jurisdiction dictates that only a police force expressly authorized by Congress could exercise police powers at Dulles and Washington National. He implicitly argues that since the MWAA Police Department was not expressly authorized in the Transfer Act, it is only a creature of the General Assembly. *See*, Acts of Assembly of 1987, § 7(B).

Dalal's argument, however, is not supported by the Act since Congress did, in fact, authorize the MWAA to create a police force. The Transfer Act authorized the MWAA to exercise "all the powers and jurisdiction as are conferred upon it jointly by the legislative authority of the Commonwealth of Virginia and the District of Columbia *or either of the jurisdictions and concurred in by the legislative authority of the other jurisdiction . . . .*" 49 U.S.C. App. § 2456(a). Since Virginia did authorize the creation of the MWAA police force, and since Dalal fails to demonstrate that the District of Columbia did not enact legislation similarly authorizing or otherwise

concurring in Virginia's creation of the MWAA Police Department, he has not shown that the MWAA police force is not a creature of both the government of the District of Columbia and the Commonwealth as authorized by Congress under 49 U.S.C. App. § 2456(a).

Furthermore, while the Transfer Act expressly recognized Virginia's concurrent police power jurisdiction at the airports, 49 U.S.C. App. § 2458(c), it did not purport to mandate how Virginia would exercise that concurrent jurisdiction. Moreover, under our federal system, such a mandate would have been unconstitutional. The logical extension of Dalal's argument would require Congress' express authority to exercise police power wherever federal property is situated. No support is advanced for such a premise. Nor, I think, can such support be found. In fact, the Supreme Court has repeatedly held that an intention of Congress to exclude states from exercising their police power over traditional local matters, such as public safety and order and the regulation of the use of streets and highways, must clearly be manifested, and the Supreme Court will not lightly infer that Congress — by mere passage of a federal act — has impaired traditional sovereignty of the states in that regard. *Allen-Bradley Local, etc. v. Wisconsin Employment Rel. Bd.*, 315 U.S. 740, 749, 62 S. Ct. 820, 825 (1942).

### B. *Lack of State Court Jurisdiction Argument*

Dalal next argues that the Virginia courts lack jurisdiction to try violations of a Virginia criminal statute committed on Dulles property and its surrounding facilities, including the Dulles Access Road and Toll Road. The short answer to that argument is that the Act of Assembly of 1987, Chapter 665, § 6(H)(1), clearly affords such authority to state courts of the political subdivision in which the airport is located. As to Dulles, those courts include the courts of Fairfax County.

Dalal's emphasis on the language of the Act that "the courts of the Commonwealth of Virginia may exercise jurisdiction over Washington National Airport," 49 U.S.C. App. § 2458(c), clarifies what courts will hear cases committed at Washington National on account of its unusual, historical status as a federal enclave. *See, Commonwealth v. United Airlines*, 219 Va. 374 (1978). It does not, however, negate the plainly recognized authority of the courts of Fairfax County as to crimes and traffic violations committed at Dulles. Indeed, Dalal's construction of § 2458(c) accords no meaning to the first coordinate phrase of that section which

states, "the Commonwealth of Virginia shall have concurrent police power authority over the Metropolitan Washington Airports." 49 U.S.C. App. § 2458(c). As a result, Dalal's interpretation of this section of the Act violates the well-recognized rule of statutory construction that effect should be given to every section, clause, work, or part of a statute. *Burnette v. Commonwealth*, 194 Va. 785, 788 (1953).

## C. *MWAA's Lack of Delegated Authority Argument*

Dalal next argues that in enacting Title 46.2 of the Code of Virginia, the General Assembly failed to recodify the traffic offenses defined in Title 46.1. Since Section 7 of Chapter 665 of the 1987 Acts of Assembly delegates all powers to the MWAA Police Department otherwise delegated to police under Title 46.1 and since the General Assembly did not recodify the provisions of Title 46.1 in Title 46.2, Dalal argues that the MWAA police do not enjoy the powers of arrest for Title 46.2 offenses; that Officer Smeal could not have had probable cause to arrest Dalal for a Title 46.2 traffic offense; and, therefore, that Dalal's arrest was the fruit of an unlawful arrest.

The foregoing argument must also be rejected. As the Commonwealth succinctly and persuasively argues in its brief, the 1987 Acts of Assembly, Chapter 665, § 7(B), affords power to the MWAA police force to arrest for any crimes and offenses, whether, for instance, contained in Section 46.1-190 or Section 46.2-862. *See*, Commonwealth's brief, at 3.

## D. *The Separation of Powers Argument*

The heart of Dalal's Separation of Powers Argument is the assumption that the MWAA Board's creation of a police force was not a power expressly delegated to the MWAA and therefore required approval by the Board of Review. Since the Board of Review's powers violated the separation of powers doctrine in accordance with the *Hechinger* decision, Dalal contends that the MWAA's action in creating the Police Department is invalid and, therefore, that Officer Smeal was without police power authority to arrest him.

Dalal's argument fails for a number of reasons. First, as previously discussed in II.A. of this decision, in the Transfer Act, Congress expressly recognized that police power over Dulles and Washington National would be exercised by the Commonwealth of Virginia. *See*, 49 U.S.C. App. §§ 2456(a), 2258(c). Clearly, that exercise of police power would depend

on those law enforcement agencies empowered by the Commonwealth. As addressed above, the General Assembly expressly empowered the MWAA Police Department to make arrests at the airports. 1987 Va. Acts, ch. 668, § 7(B). Therefore, approval by the Board of Review was not necessary for the establishment of the MWAA police.

However, even if Dalal is correct that the Board of Review's approval was necessary for the creation of the MWAA police, the Transfer Act contains a "separability" clause, which in the event of invalidation of parts of the Act, legitimated those sections not deemed invalid. 49 U.S.C. App. § 2460. Since the Transfer Act granted the MWAA Board with authority "to protect" Dulles and Washington National, 49 U.S.C. App. § 2456(c), even if the Board of Review's powers are not considered, the MWAA Board independently enjoyed the power to create and maintain the MWAA police force.

Finally, even if the Transfer Act's savings provision is disregarded, and even if it is assumed that the creation of the MWAA Police Department was dependent upon the Board of Review's exercise of the unconstitutional powers of approval, it does not necessarily follow that the creation of the MWAA police force was invalid. Indeed, *Hechinger* suggests that such an action should "be accorded *de facto* validity." 36 F.3d 97; *See Buckley v. Valeo*, 424 U.S. 1, 96 S. Ct. 612 (1976). Dalal argues that such continued validity of the MWAA Police Department, according to *Hechinger*, depends upon whether the creation of the police force is viewed as an administrative action or not. Dalal submits that if viewed as administrative, it enjoys *de facto* validity; but if not, it is invalid. *See, Buckley v. Valeo*.

This argument, however, has little merit. In fact, the very authorities cited by Dalal for the proposition that the administrative nature of an action is decisive demonstrate otherwise. While the acts validated in *Valeo* were recognized as being administrative in nature, the Court also recognized that legislative acts of lawmakers elected pursuant to unconstitutional apportionment plans were valid. *E.g., Connor v. Williams*, 404 U.S. 549, 550-51 (1972). It would seem that the real explanation is that the application of the separation of powers doctrine to invalidate government action must be circumscribed so as to minimize the wide-ranging, detrimental effects on the body politic.

In the absence of more persuasive authority, this Court will not invalidate the acts of the MWAA Police Department by according retroactive

invalidity to the Board of Review's presumed approval of the creation of that Department.

For the foregoing reasons, Mr. Dalal's motion to dismiss the charge against him is denied.