ALLEN-BRADLEY LOCAL NO. 1111, UNITED ELEC-
TRICAL, RADIO & MACHINE WORKERS OF
AMERICA, ET AL. *v.* WISCONSIN EMPLOYMENT
RELATIONS BOARD ET AL.

No. 252. Argued March 2, 1942.—Decided March 30, 1942.

*Messrs. Max E. Geline* and *Eugene Cotton* for appel-
lants. *Messrs. Lee Pressman, Joseph Kovner,* and *An-
thony Wayne Smith* were with *Mr. Geline* on the brief.

*Messrs. N. S. Boardman,* Assistant Attorney General of
Wisconsin, and *Leo Mann* for appellees. *Messrs. John E.
Martin,* Attorney General, *James Ward Rector,* Deputy

Attorney General, and *Harold H. Persons,* Assistant Attorney General, were on the brief with *Mr. Boardman* for the Wisconsin Employment Relations Board. *Mr. Louis Quarles* was on the brief with *Mr. Mann* for the Allen-Bradley Company.

Briefs of *amici curiae* were filed by *Solicitor General Fahy* on behalf of the United States, setting forth the position of the Government on the question whether the National Labor Relations Act supersedes the Wisconsin Employment Peace Act; and by *Messrs. Joseph A. Padway* and *I. E. Goldberg* on behalf of the Wisconsin State Federation of Labor, urging reversal.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The sole question presented by this case is whether an order of the Wisconsin Employment Relations Board, entered under the Wisconsin Employment Peace Act (L. 1939, ch. 57; Wis. Stat. (1939) ch. 111, pp. 1610–18), is unconstitutional and void as being repugnant to the provisions of the National Labor Relations Act. 49 Stat. 449; 29 U. S. C. § 151 *et seq.*

Sec. 111.06 (2) of the state Act provides in part:

"It shall be an unfair labor practice for an employe individually or in concert with others:

"(a) To coerce or intimidate an employe in the enjoyment of his legal rights, including those guaranteed in section 111.04,[1] or to intimidate his family, picket his

---

[1] Sec. 111.04 provides: "Employes shall have the right of self-organization and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection; and such employes shall also have the right to refrain from any or all of such activities."

domicile, or injure the person or property of such employe or his family.

.   .   .   .   .

"(f) To hinder or prevent, by mass picketing, threats, intimidation, force or coercion of any kind the pursuit of any lawful work or employment, or to obstruct or interfere with entrance to or egress from any place of employment, or to obstruct or interfere with free and uninterrupted use of public roads, streets, highways, railways, airports, or other ways of travel or conveyance."

The state Board is given authority on the filing of a complaint to conduct hearings, to make findings of fact, and to issue orders.[2] § 111.07. Orders of the state Board are enforceable by the circuit courts. *Id.* Appellee, Allen-Bradley Co., is engaged in the manufacturing business in Wisconsin. Appellant union is a labor organization composed of the employees of that company. The union had a contract with the company governing terms and conditions of employment. The contract was cancelled by the union. Thereafter the union, by secret ballot, ordered a strike, which was called on May 11, 1939. The strike lasted about three months, during which time the company continued to operate its plant. Differences arose between the employees who were on strike and the company and those employees who continued to work. The company thereupon filed a petition with the state Board, charging the union and certain of its officers and members

---

[2] Sec. 111.07 (4) provides in part: "Final orders may dismiss the charges or require the person complained of to cease and desist from the unfair labor practices found to have been committed, suspend his rights, immunities, privileges or remedies granted or afforded by this chapter for not more than one year, and require him to take such affirmative action, including reinstatement of employes with or without pay, as the board may deem proper. Any order may further require such person to make reports from time to time showing the extent to which it has complied with the order."

with unfair labor practices. The union answered and objected, *inter alia,* to the jurisdiction of the state Board, on the ground that as respects the matters in controversy the company was subject exclusively to the provisions of the National Labor Relations Act and to the exclusive jurisdiction of the federal Board. The state Board made findings of fact and entered an order against the union and its officers and members. On a petition for review, the circuit court sustained and enforced the Board's order. The Supreme Court of Wisconsin affirmed that judgment. 237 Wis. 164, 295 N. W. 791. The case is here on appeal. Judicial Code, § 237 (a); 28 U. S. C. § 344 (a).

The findings and order of the state Board as summarized by the Supreme Court (237 Wis. pp. 168–170) are as follows:

"Briefly, from the findings the following facts appear:

"(a) Appellants engaged in mass picketing at all entrances to the premises of the company for the purpose of hindering and preventing the pursuit of lawful work and employment by employees who desired to work.

"(b) They obstructed and interfered with the entrance to and egress from the factory and obstructed and interfered with the free and uninterrupted use of the streets and sidewalks surrounding the factory.

"(c) They threatened bodily injury and property damage to many of the employees who desired to continue their employment.

"(d) They required of persons desiring to enter the factory, to first obtain passes from the union. Persons holding such passes were admitted without interference.

"(e) They picketed the homes of employees who continued in the employment of the company.

"(f) That the union by its officers and many of its members injured the persons and property of employees who desired to continue their employment.

"(g) That the fourteen individual appellants who were striking employees, had engaged in various acts of mis-

744

conduct. The facts relating to those were found specifically. The acts consisted of intimidating and preventing employees from pursuing their work by threats, coercion, and assault; by damaging property of employees who continued to work; and as to one of them by carrying concrete rocks which he intended to use to intimidate employees who desired to work.

"Based upon these findings the board found as conclusions of law, that the union was guilty of unfair labor practices in the following respects:

"(a) Mass picketing for the purpose of hindering and preventing the pursuit of lawful work.

"(b) Threatening employees desiring to work with bodily injury and injury to their property.

"(c) Obstructing and interfering with entrance to and egress from the factory.

"(d) Obstructing and interfering with the free and uninterrupted use of the streets and public roads surrounding the factory.

"(e) Picketing the homes of employees.

"As to the fourteen individual appellants, the board concluded that each of them was guilty of unfair labor practices by reason of threats, assaults, and other misdemeanors committed by them as set out in the findings of fact.

"Based upon its findings of fact and conclusions of law the board ordered that the union, its officers, agents, and members—

"(1) Cease and desist from:
    (a) Mass picketing.
    (b) Threatening employees.
    (c) Obstructing or interfering with the factory entrances.
    (d) Obstructing or interfering with the free use of public streets, roads, and sidewalks.
    (e) Picketing the domiciles of employees.

"The order required the union to post notices at its headquarters that it had ceased and desisted in the manner aforesaid and to notify the board in writing of steps taken to comply with the order.

"As to the fourteen individual appellants, the order made no determination based upon the finding that they were individually guilty of unfair labor practices."

It was admitted that the company was subject to the National Labor Relations Act. The federal Board, however, had not undertaken in this case to exercise the jurisdiction which that Act conferred on it. Accordingly, the Supreme Court of Wisconsin upheld the order of the state Board, stating that "there can be no conflict between the acts until they are applied to the same labor dispute." It was urged before that court, as it has been here, that there was nevertheless a conflict between that part of the findings of the state Board which deals with the individual appellants and the National Labor Relations Act. The contention is that the individual appellants who were found guilty of unfair labor practices, as defined in the state Act, are, under the terms of the federal Act, still employees of the company,[3] while under the state Act that relationship is severed.[4] As to that alleged conflict, the Wisconsin Supreme Court made two answers: First, the federal Act had not been applied to this labor dispute. Second, it is the order, not the findings, of the state Board which affects the employer and employee relationship. Since there was no provision in the order which suspended the status as employees of the fourteen individual appel-

---

[3] See *Republic Steel Corp.* v. *Labor Board,* 107 F. 2d 472, 479 (aff'd 311 U. S. 7) ; *Labor Board* v. *Stackpole Carbon Co.,* 105 F. 2d 167, 176; Hart & Prichard, The Fansteel Case: Employee Misconduct and the Remedial Powers of the National Labor Relations Board, 52 Harv. L. Rev. 1275.

[4] Sec. 111.02 (3) defines the term "employe" as including "any individual whose work has ceased solely as a consequence of or in connection with any current labor dispute or because of any unfair labor practice on the part of an employer and . . . (b) who has not been found to have committed or to have been a party to any unfair labor practice hereunder, . . ."

lants who were found guilty of unfair labor practices, there was no conflict as to their employee status under the state and federal Acts.

Various views have been advanced here. On the one hand, it is urged that, in this situation, as in the case of federal control over intrastate transportation rates (*Shreveport Case,* 234 U. S. 342, 357; *Board of Railroad Comm'rs* v. *Great Northern Ry. Co.,* 281 U. S. 412, 424, 426–428), state action should not be foreclosed in absence of a finding by the federal Board under § 10 (a) that an employer's labor practice so affects interstate commerce (*Labor Board v. Fainblatt,* 306 U. S. 601) that it should be prevented. On the other hand, it is earnestly contended that the state Act, viewed as a whole, so undermines rights protected and granted by the federal Act and is so hostile to the policy of the federal Act that it should not be allowed to survive. Acceptance of the latter theory would necessitate a reversal of the judgment below. Acceptance of the former would mean that in all cases orders of the state Board would be upheld if the federal Board had not assumed jurisdiction.

We deal, however, not with the theoretical disputes but with concrete and specific issues raised by actual cases. *Associated Press* v. *Labor Board,* 301 U. S. 103, 132; *United States* v. *Appalachian Power Co.,* 311 U. S. 377, 423, and cases cited. "Constitutional questions are not to be dealt with abstractly." *Bandini Petroleum Co.* v. *Superior Court,* 284 U. S. 8, 22; *Arizona* v. *California,* 283 U. S. 423, 464. They will not be anticipated but will be dealt with only as they are appropriately raised upon a record before us. *Tennessee Publishing Co.* v. *American National Bank,* 299 U. S. 18, 22. Nor will we assume in advance that a State will so construe its law as to bring it into conflict with the federal Constitution or an act of Congress. *Mountain Timber Co.* v. *Washing-*

*ton,* 243 U. S. 219, 246; *Great Atlantic & Pacific Tea Co.* v. *Grosjean,* 301 U. S. 412, 429–430; *Watson* v. *Buck,* 313 U. S. 387. Hence we confine our discussion to the precise facts of this case and intimate no opinion as to the validity of other types of orders in cases where the federal Board has not assumed jurisdiction.

We are not under the necessity of treating the state Act as an inseparable whole. Cf. *Watson* v. *Buck, supra.* Rather, we must read the state Act, for purposes of the present case, as though it contained only those provisions which authorize the state Board to enter orders of the specific type here involved. That Act contains a broad severability clause.[5] The Wisconsin Supreme Court seems to have been liberal in interpreting such clauses so as to separate valid from void provisions of statutes.[6] Aside from that, Wisconsin in this case has in fact applied only a few of the many provisions of its Act to appellants. And we have the word of the Wisconsin Supreme Court that "the act affects the rights of parties to a controversy pending before the board only in the manner and to the extent prescribed by the order." 237 Wis. p. 183. That construction is conclusive here. *Senn* v. *Tile Layers Union,* 301 U. S. 468, 477; *Minnesota* v. *Probate Court,* 309 U. S. 270, 273, and cases cited. Hence we need not speculate as to whether the portions of the statute on which the order rests are so intertwined

[5] Sec. 111.18 provides: "If any provision of this chapter or the application of such provision to any person or circumstances shall be held invalid the remainder of this chapter or the application of such provision to persons or circumstances other than those as to which it is held invalid shall not be affected thereby."

[6] See *State* v. *Tuttle,* 53 Wis. 45, 9 N. W. 791; *State* v. *Ballard,* 158 Wis. 251, 148 N. W. 1090; *State* v. *Board of State Canvassers,* 159 Wis. 216, 150 N. W. 542; *State* v. *Lange Canning Co.,* 164 Wis. 228, 157 N. W. 777, 160 N. W. 57; *State* v. *Marriott,* 237 Wis. 607, 296 N. W. 622.

with the others that the various provisions of the state Act must be considered as inseparable. Since Wisconsin has enforced an order based only on one part of the Act, we must consider that portion exactly as Wisconsin has treated it—"complete in itself and capable of standing alone." *Watson* v. *Buck, supra,* p. 397. Viewed in that light, no conflict with the National Labor Relations Act exists.

The only employee or union conduct and activity forbidden by the state Board in this case was mass picketing, threatening employees desiring to work with physical injury or property damage, obstructing entrance to and egress from the company's factory, obstructing the streets and public roads surrounding the factory, and picketing the homes of employees. So far as the fourteen individuals are concerned, their status as employees of the company was not affected.

We agree with the statement of the United States as *amicus curiae* that the federal Act was not designed to preclude a State from enacting legislation limited to the prohibition or regulation of this type of employee or union activity. The Committee Reports[7] on the federal Act plainly indicate that it is not "a mere police court meas-

---

[7] S. Rep. No. 573, 74th Cong., 1st Sess., p. 16: "Nor can the committee sanction the suggestion that the bill should prohibit fraud or violence by employees or labor unions. The bill is not a mere police court measure. The remedies against such acts in the State and Federal courts and by the invocation of local police authorities are now adequate, as arrests and labor injunctions in industrial disputes throughout the country will attest. The Norris-LaGuardia Act does not deny to employers relief in the Federal courts against fraud, violence or threats of violence. See 29 U. S. C. § 104 (e) and (i)." And see H. Rep. No. 1147, 74th Cong., 1st Sess., pp. 16-17; Report of the National Labor Relations Board, Hearings before the Senate Committee on Education and Labor, 76th Cong., 1st Sess., on S. 1000, S. 1264, S. 1392, S. 1550, S. 1580, and S. 2123, Part 3, p. 521.

ure" and that authority of the several States may be exerted to control such conduct. Furthermore, this Court has long insisted that an "intention of Congress to exclude States from exerting their police power must be clearly manifested." *Napier* v. *Atlantic Coast Line R. Co.*, 272 U. S. 605, 611, and cases cited; *Kelly* v. *Washington*, 302 U. S. 1, 10; *South Carolina Highway Dept.* v. *Barnwell Bros.*, 303 U. S. 177; *H. P. Welch Co.* v. *New Hampshire*, 306 U. S. 79, 85; *Maurer* v. *Hamilton*, 309 U. S. 598, 614; *Watson* v. *Buck, supra.* Congress has not made such employee and union conduct as is involved in this case subject to regulation by the federal Board. Nor are we faced here with the precise problem with which we were confronted in *Hines* v. *Davidowitz*, 312 U. S. 52. In the *Hines* case, a federal system of alien registration was held to supersede a state system of registration. But there we were dealing with a problem which had an impact on the general field of foreign relations. The delicacy of the issues which were posed alone raised grave questions as to the propriety of allowing a state system of regulation to function alongside of a federal system. In that field, any "concurrent state power that may exist is restricted to the narrowest of limits." p. 68. Therefore, we were more ready to conclude that a federal Act in a field that touched international relations superseded state regulation than we were in those cases where a State was exercising its historic powers over such traditionally local matters as public safety and order and the use of streets and highways. *Maurer* v. *Hamilton, supra,* and cases cited. Here, we are dealing with the latter type of problem. We will not lightly infer that Congress by the mere passage of a federal Act has impaired the traditional sovereignty of the several States in that regard.

Furthermore, in the *Hines* case the federal system of alien registration was a "single integrated and all-

embracing" one, p. 74. Here, as we have seen, Congress designedly left open an area for state control. Nor can we say that the control which Congress has asserted over the subject matter of labor disputes is so pervasive (Cf. *Cloverleaf Butter Co.* v. *Patterson, ante,* p. 148) as to prevent Wisconsin, under the familiar rule of *Pennsylvania R. Co.* v. *Public Service Comm'n,* 250 U. S. 566, 569, from supplementing federal regulation in the manner of this order. Sec. 7 of the federal Act guarantees labor its "fundamental right" (*Labor Board* v. *Jones & Laughlin Steel Corp.,* 301 U. S. 1, 33) to self-organization and collective bargaining. Sec. 8 affords employees protection against unfair labor practices of employers including employer interference with the rights secured by § 7. Sec. 9 affords machinery for providing appropriate collective bargaining units. And § 10 grants the federal Board "exclusive" power of enforcement. It is not sufficient, however, to show that the state Act *might* be so construed and applied as to dilute, impair, or defeat those rights. *Watson* v. *Buck, supra.* Nor is the unconstitutionality of the provisions of the state Act which underlie the present order established by a showing that other parts of the statute are incompatible with and hostile to the policy expressed in the federal Act. Since Wisconsin has applied to appellants only parts of the state Act, the conflict with the policy or mandate of the federal Act must be found in those parts. But, as we have said, the federal Act does not govern employee or union activity of the type here enjoined. And we fail to see how the inability to utilize mass picketing, threats, violence, and the other devices which were here employed impairs, dilutes, qualifies or in any respect subtracts from any of the rights guaranteed and protected by the federal Act. Nor is the freedom to engage in such conduct shown to be so essential or intimately related to a realization of the guarantees of the federal Act that its denial is an impairment of the federal

policy. If the order of the state Board affected the status of the employees, or if it caused a forfeiture of collective bargaining rights, a distinctly different question would arise. But since no such right is affected, we conclude that this case is not basically different from the common situation where a State takes steps to prevent breaches of the peace in connection with labor disputes. Since the state system of regulation, as construed and applied here, can be reconciled with the federal Act and since the two as focused in this case can consistently stand together, the order of the state Board must be sustained under the rule which has long obtained in this Court. See *Sinnot* v. *Davenport,* 22 How. 227, 243.

In sum, we cannot say that the mere enactment of the National Labor Relations Act, without more, excluded state regulation of the type which Wisconsin has exercised in this case. It has not been shown that any employee was deprived of rights protected or granted by the federal Act or that the status of any of them under the federal Act was impaired. Indeed, if the portions of the state Act here invoked are invalid because they conflict with the federal Act, then so long as the federal Act is on the books it is difficult to see how any State could under any circumstances regulate picketing or disorder growing out of labor disputes of companies whose business affects interstate commerce.

We rest our decision on the narrow grounds indicated. We have here no question as to constitutional limitations on state control of picketing under the rule of *Thornhill's* case, 310 U. S. 88. Nor are any other constitutional questions concerning the Wisconsin Act properly presented. And in view of our disposition of the case we find it unnecessary to pass on other questions raised by the appellees.

*Affirmed.*