TERRELL, Justice.
Appellees, a majority of the employees of Cover Girl, Inc., secured a final decree of injunction against appellants as defendants, enjoining them and their Union from participating in a strike against the employer, a Miami manufacturer of women’s wearing apparel, from intimidating or coercing plaintiffs to participate in said strike, and from picketing their employer’s place of business. A motion to vacate the final decree and to join the employer as third party defendant was denied, thereupon this appeal was prosecuted.
Appellants urge three questions as grounds for reversal. Questions one and two turn on evidentiary matters. that the trial court settled and we find no reason to overthrow his judgment or to comment further as to these.’ We treat the third question which is grounded on the contention that state courts are without jurisdiction to entertain and adjudicate controversies involving labor relations.
The basis of this contention is that the Federal Government has preempted the field of labor relations where interstate commerce is involved and being so jurisdiction of labor disputes is vested in the National Labor Relations Board whose jurisdiction is exclusive. There is no showing whatever that Cover Girl, Inc. is engaged in interstate' commerce, but if the record made such a showing the state court might not enjoin peaceful picketing if it involved án unfair labor practice’under the Taft Hartley Act, 29 U.S.C.A. § 141 et seq. Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776 (AFL), 346 U.S. 485, 74 S.Ct. 161, ’but see United Const. Workers, Affiliated with United Mine Workers of America v. Laburnum Const. Corp., 347 U.S. 656, 74 S.Ct. 833.
In the Laburnum case the Court permitted the employer to recover damages from the defendant union in a state court, 194 Va. 872, 75 S.E.2d 694, for unfair labor practices amounting to a common law tort. The opinion does not mention the unfair labor practices involved (see footnote 4 of the opinion) as such, but the Supreme Court assumed that the union’s conduct was an unfair labor practice under Section 8(b) (1) of *102 Taft-Hartley Act, the pertinent part being: “Sec. 8(b). It shall be an unfair labor practice for a labor organization or its agents— (1)to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7”. (“Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities * * *.”) [347 U.S. 656, 74 S.Ct. 836.]
The Court distinguished the case from Garner v. Teamsters Union, supra, in its holding that state courts are unable to enjoin unfair labor practices through “preventive procedures” that conflict with federal law to the same end because Taft-Hartley has occupied the field to the exclusion of the states. As to damages arising from unfair labor practices, said the Court, Congress had prescribed no procedure for dealing with the consequences of tortious conduct already committed, there was no ground for concluding that existing (state or federal) criminal penalties or civil liability had been eliminated. From a reading of the last part of the opinion it is manifest that the Court undertook to clarify the Garner case and to allay some of the fears it created. See the criticism of Mr. Rose cited in 40 Va.L.Rev. 177.
The cleavage in jurisdictions of state and federal courts as well as administrative agencies was further pointed out in the Garner case by calling attention to Allen-Bradley Local No. 1111, United Electrical Radio and Machine Workers of America v. Wisconsin Employment Relations Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154. "We have held that the state still may exercise its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.” (Emphasis added.) [346 U.S. 485, 74 S.Ct. 164.] The Court then went on to point out that nothing indicated that the activity enjoined in the Garner case constituted or threatened a probable breach of peace or would call for extraordinary police measures on the part of state or city authorities.
From what has been said, it seems settled that while states are precluded from applying their “preventive” labor law in controversies affecting interstate commerce, their power to preserve the peace remains intact even though it be invoked in connection with a labor dispute. Ratner, Problems of Federal-State Jurisdiction in Labor Relations, 3 Labor L.J. 750, 761-62 (1952), 7 Vanderbilt L.Rev. 422, 424 (1954). See also International Union UAW, AFL v. Wisconsin Emp. Rel. Bd., 1949, 336 U.S. 245, 254, 69 S.Ct. 516, 93 L.Ed. 651, commonly referred to as the “Briggs-Stratton case” (cited in the Garner case) wherein certain types of unduly coercive conduct (of nebulous bounds) falling short of actual or threatened violence (intermittent and unannounced stoppages) was subject to state regulation.
Appellants overlook the fact that violence was the predicate for the injunc-tive order under review. There was testimony of violence in the record, that violence did occur, that conditions were threatening and might develop additional breaches of the peace, and that employees were coerced. Appellants say that all these were “minor” but the trouble with that contention is that we are required to follow the trial court rather than counsel for appellants when there is support for the court’s order.
The decree appealed from is affirmed.
ROBERTS, C. J., and THOMAS and MATHEWS, JJ., concur.