**GOLDEN STATE TRANSIT CORP., Plaintiff,**

v.

**CITY OF LOS ANGELES, Defendant.**

**No. CV 81–1519.**

United States District Court, C. D. California.

Aug. 17, 1981.

John B. Rice and Michael R. Mitchell, Woodland Hills, Cal., for plaintiff.

Burt Pines, City Atty., Thomas C. Bonaventura, Senior Asst. City Atty. by John F. Haggerty, Asst. City Atty., Los Angeles, Cal., for defendant.

## DECISION GRANTING PRELIMINARY INJUNCTION

HAUK, Chief Judge.

On March 23, 1981, by a vote of 11 to 1, the Los Angeles City Council voted in effect to allow the ordinance which permitted the plaintiff Golden State Transit Corporation, doing business as Yellow Cab of Los Angeles ("Yellow Cab"), to operate its taxicab franchise within the City limits to expire on midnight March 31, 1981. At the time of this vote Yellow Cab was embroiled in a labor dispute with its Teamster drivers and it is claimed by the plaintiff, Yellow Cab, that the City Council voted as it did in order to exert pressure on the plaintiff to settle its labor dispute. Yellow Cab charges that defendant City's refusal to pass an ordinance extending its franchise constitutes: 1) an unlawful interference with a labor dispute governed by federal law, a violation of the Federal Supremacy Clause; 2) a violation of the Due Process Clause; and 3) a violation of the Equal Protection Clause. Yellow Cab, therefore, seeks a preliminary injunction enjoining the City from refusing to extend its franchise.

## FACTUAL BACKGROUND:

In 1977, plaintiff purchased the assets and trade name of the then defunct "old" Yellow Cab Co., and under the terms of this transaction, plaintiff was assigned the existing Yellow Cab franchise due to expire on October 29, 1980. The City Council approved this transfer on June 22, 1977.

Yellow Cab applied for a renewal of this franchise on March 30, 1980. Some twelve (12) other franchise taxicab companies also applied for renewals at the same time, inasmuch as all the City's taxicab franchises were due to expire on the same date. All of the twelve existing franchises were temporarily extended by the City Council to March 31, 1981, in order to allow an evaluation of the City's overall taxicab situation by the City Department of Transportation for recommendation to the City's Board of Transportation Commissioners.

Meanwhile, plaintiff's collective bargaining agreement with its Teamster drivers expired in October of 1980. During negotiations for a new agreement, interim agreements were adopted and plaintiff continued to operate. The labor dispute has been subject to mediation efforts, but as of this date, Yellow Cab and its Teamster drivers have been unable to agree on the provisions of a new labor contract.

On January 16, 1981, the Department of Transportation recommended to the Board of Transportation Commissioners that the existing franchises of only six (6) taxicab companies *including Yellow Cab*, be renewed for a four year term. The Department reported to the Board that all six companies, *including Yellow Cab*, were in full compliance with all the City's terms and conditions for renewal.

On January 26, 1981, the City Board of Transportation Commissioners recommended to the City Council's Transportation and Traffic Committee that long term renewals be granted to the Yellow Cab and the five (5) other franchises. The matter of the renewal franchises was scheduled for action by the full City Council on February 11, 1981. On that same date Yellow Cab's drivers went out and remain on strike.

Prior to the February 11 meeting, the Joint Council of Teamsters sent letters to the Mayor and all City Council members advising them of the labor dispute. A Teamster representative appeared at the February 11, City Council meeting and recommended that Yellow Cab not receive a renewal of its franchise because of the labor dispute. The City Council granted 4-year renewals to the other five franchises

and postponed consideration of the Yellow Cab franchise to February 17.

At the February 17 meeting, the City Council after hearing from representatives of the Teamsters and of Yellow Cab, granted a franchise extension only until April 30, 1981, provided that the City Council found before March 27, 1981, that the 30-day extension ordinance was "in the best interests" of the City. No other franchise grant was subject to such a condition.

On March 23, 1981, the City Council met to consider whether it was in the "best interests" of the City to allow Yellow Cab the 30-day extension. Representatives of the Teamsters and the AFL–CIO detailed the facts underlying the labor dispute with Yellow Cab, alleging that plaintiff had failed to bargain in good faith, and asked that the extension be denied. Yellow Cab urged the Council to grant the extension to avoid intervening in the labor dispute.

At the meeting, the President of the Council stated that "it will be very difficult to get this ordinance passed to extend this franchise if the labor dispute is not settled by the end of the week ..." The Council then voted to defeat a motion which recommended that the Council find that it would be in the best interests of the City to extend the franchise, thus allowing Yellow Cab's franchise to expire on March 31, 1981. It is undisputed that the sole basis for refusing to extend plaintiff's franchise was its labor dispute with its Teamster drivers.

Yellow Cab then filed this action for declaratory and injunctive relief, and on March 30, 1981, this Court granted plaintiff's application for a temporary restraining order preserving its status as a franchised taxicab operator up to and including April 13, 1981, the date of the hearing of the instant motion for a preliminary injunction.

### FACTORS TO BE CONSIDERED IN GRANTING A PRELIMINARY INJUNCTION

The standards for determining whether a preliminary injunction should be granted have found expression in this Circuit in the form of alternative tests.

"One moving for a preliminary injunction assumes the burden of demonstrating *either* a combination of probable success and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." *Wm. Inglis & Sons Baking Co. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1975). (emphasis added).

The relationship between these two tests was explained in *Benda v. Grand Lodge of the International Association of Machinists & Aerospace Workers*, 584 F.2d 308 (9th Cir. 1978), as follows:

"Recent cases have made it clear ... that there are not really two entirely separate tests, but that they are merely extremes of a single continuum. *Fox Valley Harvestore v. A. O. Harvestore Products, Inc.*, 545 F.2d 1096 (7th Cir. 1976). The critical element in determining the test to be applied is the relative hardship to the parties. *If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly. Aguirre v. Chula Vista Sanitary Service*, 542 F.2d 779 (9th Cir. 1976). No chance of success at all, however, will not suffice." *Benda v. Grand Lodge, etc.* supra, at 315. (emphasis added).

In balancing the hardships in the present case, there can be no question but that the scales tip overwhelmingly toward Yellow Cab. The City can show no hardship whatsoever from the granting of an injunction, while the harm that would come to Yellow Cab from the denial of injunctive relief would be both substantial and irreparable— it would be forced out of business. Such being the case, the degree to which plaintiff must establish the likelihood of success on merits is significantly reduced, especially since there is no doubt that the denial of the Yellow Cab franchise presents serious questions of public policy.

### PREEMPTION—SUPREMACY CLAUSE:

It is undisputed that defendant City Council's refusal to renew plaintiff's taxi-

cab franchise was based solely on the grounds that plaintiff's union drivers were on strike. Plaintiff urges that the City Council's actions in this regard are an unlawful state interference in a labor dispute within the exclusive jurisdiction of the National Labor Relations Board constituting a violation of the Supremacy Clause, U.S. Const., art. 6 § 2.

In *Lodge 76, International Association of Machinist and Aerospace Workers, AFL–CIO, et al., v. Wisconsin Employment Relations Commission, et al.*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976), the Supreme Court discusses at length the extent to which federal labor policy preempts the authority of state and local government entities to act in matters affecting labor disputes.

The facts of *Lodge 76* are simple enough: During negotiations between Union and Company for a new collective bargaining agreement, Union employees refused to work any overtime. Company filed a charge with the N.L.R.B. stating that this refusal constituted an unfair labor practice in violation of § 8(b)(3) of the N.L.R.A. [29 U.S.C. § 158(b)(3)]. The Regional Director dismissed the charge, ruling that the action did not violate the Act. The company also filed a complaint with the Wisconsin Employment Relations Commission, and that state body found that the refusal to work overtime was an unfair labor practice under *state* law. The Wisconsin Supreme Court affirmed the Commission's ruling. In reversing the Wisconsin Supreme Court, the United States Supreme Court held that "the Union's refusal to work overtime is peaceful conduct constituting activity which must be free of regulation by the States if the congressional intent in enacting the comprehensive federal law of labor relations is not to be frustrated ...." *Lodge 76*, 427 U.S., at 155, 96 S.Ct. at 2560. In enacting the N.L.R.A., Congress provided legal framework for the conduct of labor disputes between employers and union organizations. Within this framework, Congress struck a balance between the economic "weapons" which were to be sanctioned for use in the bargaining arsenals of the parties to labor disputes.[1] The Supreme Court has long recognized Congress' intent that unregulated conduct be "left to ... the free play of economic forces" *N.L.R.B. v. Nash-Finch Co.*, 404 U.S. 138, 144, 92 S.Ct. 373, 377, 30 L.Ed.2d 328 (1971), and state action which deprives a party of a sanctioned weapon in such an economic contact as a labor dispute has consistently been found to be a violation of the Supremacy Clause of the Federal Constitution.

The most fundamental weapon in an employer's arsenal is its right to rely on its economic strength, in the form of weathering a strike, when there is a bargaining impasse. *Beasley v. Food Fair of North Carolina*, 416 U.S. 653, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974); *American Ship Bldg. Co. v. N.L.R.B.*, 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965). By threatening to allow Yellow Cab's franchise to terminate unless it entered into a collective bargaining agreement with the Teamsters, the City Council effectively denied Yellow Cab of its most basic weapon the economic strength of an on-going franchise. Since Congress has sanctioned the self-help measures taken by Yellow Cab here in resisting the signing of a new contract with the Union, the City Council is precluded by the Supremacy Clause from taking legislative action which would frustrate the purposes of the N.L.R.A. The City Council's actions in refusing to renew Yellow Cab's franchise thus having been preempted by federal labor law, injunctive relief must issue.

In light of the fact that plaintiff has more than met the "serious question" requirement for the issuance of a preliminary injunction on "preemption" grounds alone, this Court need not now consider the merits of plaintiff's arguments that the City Council's actions were violative of the Equal Protection and Due Process Clauses of the United States Constitution.

---

1. See generally Cox, Labor Law Preemption Revisited, 85 Harv.L.Rev. 1337 (1972); Lesnick, Preemption Reconsidered: the Apparent Reaffirmation of *Garmon*, 72 Col.L.Rev. 469 (1972).

Accordingly, the preliminary injunction sought by plaintiff Yellow Cab against defendant City is issued.