**GOLDEN STATE TRANSIT CORPORA-TION, etc., Plaintiff/Appellee,**

v.

**CITY OF LOS ANGELES, Defendant/Appellant.**

No. 81–5369.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 1982.

Decided Sept. 7, 1982.

Certiorari Denied Jan. 10, 1983. See 103 S.Ct. 729.

John F. Haggerty, Asst. City Atty., Los Angeles, Cal., for defendant-appellant.

Thomas R. Sheridan, Simon & Sheridan, Los Angeles, Cal., argued, for plaintiff-ap-

pellee; Michael R. Mitchell, Woodland Hills, Cal., on brief.

Before ANDERSON, SKOPIL and CANBY, Circuit Judges.

CANBY, Circuit Judge.

The City of Los Angeles (City) appeals from the district court's grant of a preliminary injunction enjoining the City from allowing the taxicab franchise of Golden State Transit Corporation d/b/a Yellow Cab of Los Angeles (Yellow Cab) to terminate or from treating the franchise as if it had expired. *See Golden State Transit Corp. v. City of Los Angeles,* 520 F.Supp. 191 (C.D.Cal.1981). Yellow Cab alleged that the City's refusal to grant a renewal of Yellow Cab's taxicab franchise constituted unlawful interference with the ongoing collective bargaining between Yellow Cab and Teamsters Local No. 572 and deprived Yellow Cab of due process and equal protection of the law in violation of 42 U.S.C. § 1983. We agree with the district court's conclusion, 520 F.Supp. at 193, that the balance of hardships in this case tips sharply in Yellow Cab's favor. Nonetheless, since Yellow Cab does not have a fair chance of success on the merits, *see Benda v. Grand Lodge of International Ass'n of Machinists & Aerospace Workers,* 584 F.2d 308, 315 (9th Cir. 1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979), we conclude that the district court abused its discretion in granting the preliminary injunction. Accordingly, we vacate the preliminary injunction.

Unlawful Interference in a Labor Dispute

The City contends that its actions did not constitute an impermissible interference in a labor dispute because (1) such interference was not the purpose behind its actions and (2) federal labor law does not preempt the City from exercising its authority to deny renewal of a taxicab franchise. We conclude that Yellow Cab has little chance of making the requisite showing that Congress intended to bar a city from refusing to renew the taxicab franchise of a company engaged in a collective bargaining dispute with its drivers. Thus, with respect to the preemption issue, Yellow Cab has failed to satisfy the "serious question" requirement for issuance of a preliminary injunction. *See id.* at 314–15.

The district court found that "the City's true purpose in declining to renew plaintiff's [Yellow Cab's] franchise" as "substantively to influence the economic (as opposed to political) weapons of Yellow Cab and its Teamster drivers in their labor negotiation efforts, by diminishing the economic power of the drivers." Excerpt of Record at 116. Courts, however, are not permitted to inquire into alleged motives of legislators. Rather, they must look to the effects of the legislative acts. *Daniel v. Family Security Life Insurance Co.,* 336 U.S. 220, 224, 69 S.Ct. 550, 552, 93 L.Ed. 632 (1949); *see United States v. Des Moines Navigation & Railway Co.,* 142 U.S. 510, 544–45, 12 S.Ct. 308, 317, 35 L.Ed. 1099 (1892). The district court did determine that one *effect* of the denial of Yellow Cab's franchise renewal was to alter the balance of power in the collective bargaining dispute in favor of the union. *See* 520 F.Supp. at 194. That determination is not clearly erroneous. *See* Fed.R.Civ.P. 52(a). There is ample evidence in the record to support a finding that by threatening to deny and ultimately denying renewal of Yellow Cab's franchise, the city deprived Yellow Cab of an economic weapon—the opportunity simply to outlast the strikers.

In view of the effect of the city's actions upon the ongoing labor dispute, we must consider whether the National Labor Relations Act, as amended, 29 U.S.C. §§ 151–169, preempted the City's power to deny Yellow Cab's application for renewal of its franchise. Federal labor legislation seeks to strike a balance between the power of labor and management by protecting certain activities, *see* 29 U.S.C. § 157, prohibiting certain practices, *see id.* § 158, and leaving other conduct "unregulated because left 'to be controlled by the free play of economic forces.'" *Lodge 76, International*

*Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 140, 96 S.Ct. 2548, 2553, 49 L.Ed.2d 396 (1976) (*quoting NLRB v. Nash-Finch Co.*, 404 U.S. 138, 144, 92 S.Ct. 373, 377, 30 L.Ed.2d 328 (1971)); *accord, New York Telephone Co. v. New York State Dep't of Labor*, 440 U.S. 519, 531, 99 S.Ct. 1328, 1336, 59 L.Ed.2d 553 (1979) (plurality opinion); *Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton*, 377 U.S. 252, 259–60, 84 S.Ct. 1253, 1258, 12 L.Ed.2d 280 (1964). Yellow Cab contends that the actions of the City fall within the last of these three categories and therefore are preempted by federal law. The Supreme Court, however, has clearly stated that where interests "deeply rooted in local feeling and responsibility" are affected, we may not lightly infer that Congress intended to deprive state and local governments of the power to act. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959), *quoted with approval in Lodge 76*, 427 U.S. at 136, 96 S.Ct. at 2551. In such an instance, a finding of preemption must rest upon "compelling congressional direction." *San Diego Building Trades Council*, 359 U.S. at 244, 79 S.Ct. at 779.

The use of streets and highways is a "traditionally local matter" left to state and local regulation under the police power. *Allen-Bradley Local No. 1111 v. Wisconsin Employment Relations Board*, 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154 (1942), *quoted in Lodge 76*, 427 U.S. at 136 n.2, 96 S.Ct. at 2551 n.2. Yellow Cab has not brought to our attention nor have we found any evidence that might rise to the level of a "compelling congressional direction" to deprive a local government of the power to deny a franchise renewal to a franchisee involved in a labor dispute. We therefore conclude that Yellow Cab has little chance of prevailing on the merits of the preemption question. *See Benda*, 584 F.2d at 315.

Due Process

■ The City contends that Yellow Cab has no constitutionally protected property interest in a franchise renewal and, there-

fore, denial of Yellow Cab's application for a franchise renewal did not deprive Yellow Cab of procedural due process. We agree.

■ The requirements of procedural due process apply only to deprivations of a constitutionally protected liberty or property interest. *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). "A property interest in a benefit protected by the due process clause results from a legitimate claim of entitlement created and defined by an independent source, such as state or federal law." *Russell v. Landrieu*, 621 F.2d 1037, 1040 (9th Cir. 1980). Yellow Cab has failed to bring to our attention any state law or city ordinance that creates an expectation of entitlement to a franchise renewal. The relevant provision of the Los Angeles City Charter provides in part: "The City *may*, by ordinance, ... grant to the holder of such franchise a new franchise to replace such franchise about to expire." Los Angeles City Charter, § 3, subdiv. 8(D); Excerpt of Record at 4 (emphasis added). The wording of the statute is permissive, not mandatory, thus conferring on the City discretion to deny franchises to applicants even if they meet any established eligibility requirements. *See Erdelyi v. O'Brien*, 680 F.2d 61, 63 (9th Cir. 1982); *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980). Moreover, Yellow Cab has not referred us to a set of standards defining eligibility for renewal. *Cf. Board of Regents v. Roth*, 408 U.S. at 566–67, 92 S.Ct. at 2703 (absent statutory or administrative standards defining eligibility for reemployment, decision whether to rehire a nontenured teacher is left to unfettered discretion of state university officials). Yellow Cab does not assert that the terms of the original franchise secure a property interest in renewal. Nor has Yellow Cab alleged the existence of rules and understandings promulgated and fostered by city officials that might justify a legal entitlement. *See Perry v. Sindermann*, 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (policies and practices may establish legitimate claim of entitlement). The recommendation by vari-

ous city committees that Yellow Cab's franchise be renewed does not rise to the level of a de facto guarantee of renewal equivalent to the de facto tenure system alleged in *Perry v. Sindermann.* At most, Yellow Cab had only a unilateral hope for renewal. *Geriatrics, Inc. v. Harris,* 640 F.2d 262 (10th Cir. 1981), *cert. denied,* 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 109. Nor is the interest asserted by Yellow Cab so fundamental as to warrant protection aside from state and local law or practice. *See Jacobson v. Hannifin,* 627 F.2d at 180.

In sum, Yellow Cab has failed to raise a serious question with respect to the threshold issue in a procedural due process claim—whether the claimant has a constitutionally protected liberty or property interest.

Equal Protection

The City next argues that its actions did not violate the Equal Protection Clause because they furthered legitimate governmental interests, namely provision of quality taxicab service and adequate compensation for taxicab drivers. Yellow Cab asserts that the sole purpose behind the differential treatment of Yellow Cab vis-a-vis the other applicants was the City's desire to coerce Yellow Cab into yielding to union demands. We conclude that Yellow Cab does not have a fair chance of demonstrating that the alleged classification is not rationally related to a legitimate governmental purpose.

In reviewing a state statute or local ordinance under the Equal Protection Clause, courts generally presume that the legislative act is valid. *Parham v. Hughes,* 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979). Where neither a fundamental right nor a suspect class is implicated, legislative classifications are constitutional if they bear some rational relationship to a permissible governmental objective. *Id.; Holloway v. Arthur Andersen & Co.,* 566 F.2d 659, 663 (9th Cir. 1977). The burden is on the party challenging the legislative judgment to convince the court that there is no set of facts that may reasonably be conceived to justify the classification. *Vance v. Bradley,* 440 U.S. 93, 111, 99 S.Ct.

939, 949, 59 L.Ed.2d 171 (1979); *Lamb v. Scripps College,* 627 F.2d 1015, 1021 & n.9 (9th Cir. 1980).

The City, in acting on the 12 applications for franchise renewals created a classification that differentiated between the one applicant engaged in a collective bargaining dispute and the remaining applicants not involved in such a dispute. Even assuming that the members of the council were motivated at least in part by an impermissible purpose, that classification still survives judicial scrutiny. It is well settled that a reviewing court "will not strike down an otherwise constitutional statute on the basis of an allegedly illicit legislative motive." *United States v. O'Brien,* 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968); *accord, Kalish v. United States,* 411 F.2d 606, 607 (9th Cir.), *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 86 (1969). The classification is valid if some legitimate state interest is advanced. The reviewing court need not and should not ascertain whether the particular governmental interest was the primary legislative purpose. *McGinnis v. Royster,* 410 U.S. 263, 276–77, 93 S.Ct. 1055, 1062, 35 L.Ed.2d 282 (1973). The City has advanced as the permissible governmental purposes behind its actions both the provision of quality taxicab service and the assurance of adequate compensation for taxicab drivers. Although these interests were not asserted until after the differential treatment of Yellow Cab had commenced, the "courts may properly look beyond the articulated state interest at the time of enactment in testing a statute under the rational basis test." *Lamb v. Scripps College,* 627 F.2d at 1021 n.9.

We conclude that Yellow Cab has not met, and has little chance of meeting, its burden of establishing that no set of facts may reasonably be conceived to justify the classification. *See Vance v. Bradley,* 440 U.S. at 111, 99 S.Ct. at 949; *Lamb v. Scripps College,* 627 F.2d at 1021 & n.9. The City could have rationally determined that denying Yellow Cab's application for renewal of its franchise would cause or contribute to higher levels of taxicab ser-

vice and increased compensation for taxicab drivers.

The district court's grant of a preliminary injunction is vacated.