GOLDEN STATE TRANSIT CORPORATION, a California corporation, doing business as Yellow Cab of Los Angeles, Plaintiff,

v.

CITY OF LOS ANGELES, a municipal corporation, Defendant.

No. CV 81–1519–CHH.

United States District Court, C.D. California.

April 29, 1983.

Simon & Sheridan, Thomas R. Sheridan, Michael R. Rogers, Los Angeles, Cal., Yaspan & Goch, Robert M. Yaspan, Michael Goch, Sherman Oaks, Cal., Alioto & Alioto, Joseph M. Alioto, San Francisco, Cal., Gray, Plant, Mooty, Mooty & Bennett, Daniel R. Shulman, Patricia A. Knipe, Minneapolis, Minn., for plaintiff.

Ira Reiner, City Atty., Thomas C. Bonaventura, Sr. Asst. City Atty., John F. Haggerty, Asst. City Atty., Los Angeles, Cal., for defendant City of Los Angeles.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

CYNTHIA HOLCOMB HALL, District Judge.

The following Findings of Fact and Conclusions of Law are entered in support of the Court's grant of partial summary judgment to defendant on the Fifth Cause of Action alleging violations of section 1 of the Sherman Act.

### FINDINGS OF FACT

Plaintiff Golden State Transit Corporation is engaged in the business of operating taxicab service in the City of Los Angeles, California. Defendant City of Los Angeles (the "City") is a municipal corporation formed under the laws of the State of California. Ordinances enacted by the City require plaintiff, and other taxicab companies seeking to do business within the City, to obtain City licenses in order to operate. City ordinances also subject plaintiff, and other taxicab companies operating in the City, to regulations relating to rates that passengers are charged and other conditions of business.

In March 1981, the Los Angeles City Council failed to renew plaintiff's operating franchise. Plaintiff has been operating without the licenses required by City regulations since April 1, 1981. This Court, per Judge Hauk, issued a preliminary injunction forbidding the City from terminating, or otherwise treating as expired, plaintiff's franchise. *Golden State Transit Corp. v. City of Los Angeles,* 520 F.Supp. 191 (C.D. Cal.1981), *vacated,* 686 F.2d 758 (9th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 729, 74 L.Ed.2d 954 (1983). Following the Supreme Court's denial of plaintiff's petition for writ of certiorari, this Court vacated the preliminary injunction. On March 28, 1983, plaintiff filed its Second Amended Complaint which repeats the Causes of Action set forth in the previous Complaints and adds a Fifth Cause of Action alleging violations of section 1 of the Sherman Act, 15 U.S.C. § 1. Following the filing of the Second Amended Complaint, the City voluntarily refrained from issuing a "Cease and Desist" order against plaintiff pending the Court's consideration of plaintiff's application for a preliminary injunction. The Court denied plaintiff's application for a preliminary injunction on April 28, 1983, and now enters Judgment in favor of defendant on the Fifth Cause of Action.

### CONCLUSIONS OF LAW

Summary judgment is appropriate where the pleadings and other materials on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). On the instant motion, the parties agree that there are no disputes as to any material fact on the issue of Sherman Act immunity. In the absence of any factual issues, the Court may grant summary judgment to either party without

requiring that a cross-motion be filed. *Factora v. District Director, Immigration & Naturalization Service,* 292 F.Supp. 518, 521 (C.D.Cal.1968).

Plaintiff's Fifth Cause of Action alleges that defendant has "engaged in a combination, contract, and conspiracy unreasonably in restraint of interstate trade and commerce" in violation of section 1 of the Sherman Act. Specifically, plaintiff points to the City's refusal to extend and renew plaintiff's taxicab franchise; its refusal to approve rate increases in the full amount requested by plaintiff; and its refusal to allow plaintiff to lease its taxicabs to independent contractors rather than hire employee drivers to operate them. Defendant does not dispute the assertion that it has imposed these restrictions on plaintiff's business; instead, it contends that it cannot be held liable for any damages that might result from its regulatory and licensing activities.

The threshold issue presented in plaintiff's Fifth Cause of Action is whether defendant enjoys the "state action" exemption from Sherman Act liability articulated in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), and subsequent cases. As the Supreme Court recently stated in *Community Communications Co. v. City of Boulder,* 455 U.S. 40, 52, 102 S.Ct. 835, 838, 841, 70 L.Ed.2d 810 (1982):

> Our precedents thus reveal that [a municipal] ordinance cannot be exempt from antitrust scrutiny unless it constitutes the action of the State ... itself in its sovereign capacity, see *Parker,* or unless it constitutes municipal action in furtherance or implementation of clearly articulated and affirmatively expressed state policy, see *City of Lafayette [v. Louisiana Power & Light Co.,* 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364]; *Orrin W. Fox Co. [New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,* 439 U.S. 96, 99 S.Ct. 403, 58 L.Ed.2d 361], and *Midcal [Cal. Retail Liquor Dealers v. Medical Aluminum,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233].

*Community Communications* makes it apparent that the requirement of "clear articulation and affirmative expression" requires a showing that the State's position is not one of "mere neutrality." In applying this test to the Colorado Home Rule Amendment, the *Community Communications* Court held that a guarantee of local autonomy alone did not affirmatively express a State policy to displace competition with local regulation.

> A State that allows its municipalities to do as they please can hardly be said to have "contemplated" the specific anticompetitive actions for which municipal liability is sought. Nor can those actions be truly described as "comprehended within the powers *granted,*" since the term, "granted," necessarily implies an affirmative addressing of the subject by the State.

102 S.Ct. at 843 (emphasis in the original).

In contrast to the statutory scheme at issue in *Community Communications,* the City of Los Angeles' regulatory authority stems from the Constitution and Public Utilities Code of the State of California. The California Constitution authorizes state regulation of taxicabs and their owners. Cal. Const., art. XII, § 4. The Legislature has asserted the power to control taxicab operations through enactment of Chapter 8 of the Public Utilities Code. Pub.Util.Code § 5351 *et seq.* Specifically, Chapter 8 applies to any "charter-party carrier of passengers," which includes "every person engaged in the transportation of persons by motor vehicle for compensation, whether in common or contract carriage, over any public highway in this State." *Id.,* § 5360. Plaintiff's taxicab operations clearly fall within this definition of utilities subject to state regulation of fares and other conditions of operation. The Public Utility Code provides, however, that taxicabs are not subject to state regulation if a municipal subdivision licenses and regulates such operations. *Id.* § 5353(g). In short, the Public Utilities Code delegates to the City of Los Angeles the power to license and regulate taxicab operations within its boundaries. If the City fails to exercise its regulatory power, the Public Utilities Commission

is obligated to act in the City's place. *See People v. City & County of San Francisco,* 92 Cal.App.3d 913, 921–25, 155 Cal.Rptr. 319; 324–26 (1979).

The City's regulatory and licensing system is, therefore, part and parcel of the overall scheme of public utilities regulation established under state law. The State of California has clearly articulated and affirmatively expressed a policy of displacing competition with regulation in the taxicab industry. Although state law does not compel the City to exercise this power, this fact alone does not subject it to antitrust liability.

> [A] political subdivision [need not] necessarily ... point to a specific, detailed legislative authorization before it properly may assert a *Parker* defense to an antitrust suit.... [A]n adequate state mandate for anticompetitive activities of cities and other subordinate governmental units exists when it is found "from the authority given a governmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of."

*City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 415, 98 S.Ct. 1123, 1138, 55 L.Ed.2d 364 (1978). In this case, the antitrust laws cannot be invoked to stymie the "legitimate exercise of governmental power," *Id.* at 416, 98 S.Ct. at 1138, directed at "a 'traditionally local matter' left to state and local regulation ...." *Golden State Transit, supra,* 686 F.2d at 760, *quoting Allen-Bradley Local No. 1111 v. Wisconsin Employment Relations Bd.,* 315 U.S. 740, 749, 62 S.Ct. 820, 825, 86 L.Ed. 1154 (1942).

Having satisfied the burden of showing that the State of California has clearly articulated and affirmatively expressed a policy to displace competition with regulation, the City must next demonstrate that the State actively supervises the implementation of the restraint. *California Retail Liquor Dealers Assoc. v. Midcal Aluminum,* 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). Unlike the retail price maintenance scheme invalidated in *Midcal,* the City regulates the taxicab operations directly rather than delegating that responsibility to private parties. *See id.* at 105–06, 100 S.Ct. at 943–944; *see also United States v. Title Insurance Rating Bureau,* 700 F.2d 1247 (9th Cir.1983). Direct regulation by the City satisfies the "active supervision" requirement established for antitrust immunity. *See New Motor Vehicle Board of California v. Orrin W. Fox Co.,* 439 U.S. 96, 99 S.Ct. 403, 58 L.Ed.2d 361 (1978); *Midcal, supra,* 445 U.S. 106 & n. 9, 100 S.Ct. 943 & n. 9.

By satisfying both parts of two-fold "state action" immunity test, defendant City of Los Angeles cannot be subjected to Sherman Act liability for its failure to renew plaintiff's operating franchise. Since the Sherman Act does not reach the City's conduct, the defendant is entitled to judgment on all claims arising under that statute.